## DREY v. PEILER.

(Court of Appeals of District of Columbia. Submitted January 12, 1923. Decided March 5, 1923.)

No. 1543.

1. Patents ⊚➡106(2)—Patentee has no advantage in interference proceedings, where applications were copending.

The fact that a patent has been issued to one party to an interference proceeding accords no advantage to him in that proceeding, if the applications were copending.

2. Patents ⊚➡106(2)—Disclosure of senior party held not to entitle him to make claims.

The disclosure of the senior party's method and apparatus for delivering molten glass from the furnace to a mold *held* not to entitle him to make the claims in interference, which were copied from the junior party's patent.

Appeal from Commissioner of Patents.

Interference proceedings between Karl E. Peiler, the senior party, and Leo A. Drey, the junior party. From a decision awarding priority to the senior party, the junior party appeals. Reversed, with directions to award priority to the junior party.

John S. Barker, of Washington, D. C., and Edward E. Longan, of St. Louis, Mo., for appellant.

Vernon M. Dorsey, of Washington, D. C., and Sidney F. Parham, of Atlanta, Ga., for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. This appeal is from the decision of the Commissioner of Patents awarding priority to appellee, Peiler, for an invention relating to a method of and apparatus for delivering molten glass from a furnace to a mold. The issue is in the following two counts:

"1. The method of delivering glass from a furnace to a mold, which consists in flowing glass on a support which contacts with only a portion of the batch and subjecting the free unsupported remaining portion of the batch to heat.

"2. The combination with a receptacle capable of holding molten glass, provided with a discharge orifice, of a chamber surrounding said orifice, and means for supporting within the chamber a substantially pear shaped gob of glass."

[1] Peiler, the senior party, copied the claims from a patent issued to appellant, Drey, on July 13, 1915. The applications, however, were

copending; hence the patent accords no advantage in this proceeding to Drey.

[2] Drey's invention consists of a closed heated chamber connected with the furnace, so that the molten glass to form a charge or gob is collected therein. Difficulty has been experienced in preventing the chilling of the glass in passing from the furnace to the mold, thereby causing defects in the finished ware. In Drey's device the glass is kept completely inclosed in the heated chamber while accumulating a charge. The temperature of the chamber is maintained at approximately the same heat as the furnace. The lower end of the chamber is inclosed by two concave blades, into which a small stream of molten glass flows, causing the lower end of the charge to assume a globular or pear shape. The advantage of this process is pointed out in the specification, in that:

"It shapes the gathering to conform more nearly to the mold, and hence the gathering, when released, will drop to the bottom of the mold, thus minimizing air bubbles in this operation, as well as facilitating the work of the plunger or other forming means."

When sufficient charge is collected, the concave knives open and the charge drops into the mold, and the knives closing sever the stream and the process of collecting another charge is repeated.

Peiler's process is entirely different. A trough projects from the furnace, through which the molten glass flows onto a rotating punty, adjusted in line with the stream of glass. Peiler's process is described in the opinion of the Board of Examiners in Chief as follows:

"In the old process of glass molding the molten glass was transferred from the furnace to the mold by an operator with a punty, the latter being dipped into the bath and turned until a sufficient quantity of the glass had been wound thereon. It was then withdrawn from the furnace and swung around to the mold, being turned in the meanwhile to prevent the glass from falling. Arriving at the mold, the punty was checked in its rotation, with the result that the molten glass flowed from the punty into the mold. Peiler's idea is to apply the principle of the rotatable punty to a flowing stream of molten glass. He therefore causes the glass to flow onto the punty head, while the latter is rotating and while the glass is accumulating thereon. To cause the mass to separate from the punty, the latter is checked or stopped in its rotation, this movement being effected by a mutilated gear train. In order to prevent the loss of too much heat from the flowing stream, Peiler surrounds the trough with a hood of refractory material, the side and rear walls of which are shown as depending below the plane of the trough and below the punty. To guard still further against chilling of the glass, he causes a flame to play upon the end of the trough and upon the stream about the punty. The Peiler hood is entirely open below, and also at its front from a point substantially tangent with the lower surface of the punty One of the side walls has an aperture therethrough for the punty, the front wall has an opening for the flame that plays upon the glass, and the top has an opening through which the gate extends."

The board then cites a number of patents tending to show that Peiler has gone no further in the way of conserving heat than is shown by the prior art. Referring to the prior art, the Board said:

"While Peiler, like most of the above patentees, seems to have had in mind the idea of preventing excessive chilling by shielding the glass from air cur-

rents, he has not provided a chamber in which the batch or gob is formed that is protected from the influences of the air in any such degree as Drey."

We agree with the Board of Examiners in Chief, who held Drey entitled to priority, that Peiler discloses no means for supporting the charge or gob within the terms of claim 1. While the punty supports the charge during suspension, and drops it in pear shape into space, it is not the support described in the Drey patent. Hence it does not come within the rule of construction that, where counts are taken from the claims of a patent, the one copying the claims is bound by the meaning intended by the patentee. Nor do we think that the chamber disclosed in the Peiler application even remotely meets the claims which he seeks to appropriate from the Drey patent.

The decision of the Commissioner is reversed, with directions to award priority to appellant, Drey.