**In re HORTON (two cases).**
**Patent Appeals Nos. 2827, 2828.**

Court of Customs and Patent Appeals.
Jan. 25, 1932.

J. Bernhard Thiess and A. Arnold Brand, both of Chicago, Ill., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

These cases present appeals from the decisions of the Board of Appeals of the United States Patent Office affirming decisions of the Examiner refusing to allow all of the claims in each case (numbered 1 to 21, inclusive, in appeal No. 2827, and 1 to 15, inclusive, in appeal No. 2828) as defining nothing patentable over the prior art.

In both cases there were cited as references two patents to one Sachs; the first, No. 1,170,112, issued February 1, 1916, and the second, No. 1,181,483, issued May 2, 1916. In appeal No. 2827 there was also cited patent 1,338,180, issued to applicant, Horton, April 27, 1920.

The issues of the two appeals are so similar in their nature as that the cases were briefed together and argued orally together, and they may be disposed of in a single opinion.

Claims 1 and 10 of appeal No. 2827 appear to be typical of those involved in that appeal:

"1. In combination, a service switch mounting having a service switch associated with a protective device, terminals on said mounting for receiving gang wires, other terminals on said mounting permitting the tapping of said gang wires to establish a load circuit, said service switch being inserted in said circuit, and controlling but one of the sides thereof, the other side of said load circuit running from one of said first terminals to said load without passing through said service switch."

"10. In a service and meter test system, means for providing a single service entrance installation or a gang installation for an electrical system comprising, a switch block, terminals on said block for receiving the line wires of said system, said terminals permitting the line wires to continue past said block to loads other than the branch load leading from said block, a service switch for controlling said branch load, one side of said load connecting directly to one of said line wire terminals without passing through said switch, a meter for measuring the power delivered to this load, and a test switch in the same side of the load as said service switch for directing the line current to the load from said meter during normal service condition, or disconnecting the load from the meter to permit the line current to be diverted to the load by an additional shunt connection for establishing a meter test condition, the conversion of this branch load to a meter test condition unaffecting the continuity of the current to the rest of said gang installation."

Claims 2, 6, and 13 of appeal No. 2828 appear to be typical of those involved in that appeal:

"2. In combination with terminals for an electric meter or other apparatus in a three-wire system having two active service wires, said meter having a coil connected between each of the two active service wires and two of the three load wires, of a service switch for each of the two active service wires, a load controlling switch for each of the two load wires, and means constituting a through connection between the third service wire and the third load wire, said connection being independent of said switches."

"6. In combination with terminals for an electric meter having a pair of series coils between the active wires of a service circuit and the corresponding wires of a load circuit, of switching means in said active wires on each side of said coils for opening the circuits or for disconnecting the load circuit

from the meter, and terminal means for affording a permanent connection for the neutral wire of said circuits."

"13. In combination, a service switch enclosure, a service switch therein, fuses associated with said service switch, said service switch and said fuses being mounted parallel to each other, and a plurality of meter test devices at one end of said switch enclosure, said meter test devices being arranged parallel with respect to each other and transversely with respect to said switch and fuses."

It will be seen that the alleged inventions relate to meter testing devices used in connection with service switches in electrical distribution systems. In appeal No. 2827, the device is incorporated in a two-wire system. · In appeal No. 2828, the device is incorporated in a three-wire system. This constitutes the principal difference between the two cases.

In so far as the claims in both cases were rejected upon the patents to Sachs, appellant insists: " * * * Most of the claims covering said structures describe *meter testing switches which are additional to, and form no part of, the service switches,* and it is because of the emphasized characteristic that appellant contends that the claims are patentably distinguishable over the showing in the Sachs reference patents." (Italics quoted.)

Appellant then recites that in January, 1917, patents Nos. 1,214,078, and 1,214,079 were issued to Sachs; that at the time of their issuance he, appellant, had an application for a patent pending in the Patent Office; that he, appellant, copied certain claims from the Sachs patents for the purpose of bringing about an interference; that after considerable prosecution he was permitted "to make the claims of said Sachs patents" under a decision of the Examiners in Chief (which tribunal then existed in the Patent Office) "on the theory that the structure of said Sachs patents and the structure in said Horton application were equivalent"; that upon the interference being instituted Sachs moved to dissolve it on the ground that "Horton's structure was not equivalent to that shown by Sachs"; that the motion, after protracted proceedings before different tribunals of the Patent Office, in one of which proceedings the primary examiner denied Horton's right to make the claims involved in the counts, which decision was reversed by the Examiners in Chief, finally reached the Commissioner of Patents, who held with the primary Examiner and reversed the Examiners in Chief; and that thereafter the decision of the Commissioner was affirmed by the Court of Appeals of the District of Columbia.

Appellant insists that the argument of Sachs upon the motion to dissolve may be epitomized thus: A "load controlling switch" of the Horton type is not comparable with, or equivalent to, the "load controlling switch" recited in the Sachs patent.

Without going into details as to the claimed similarities and differences in the respective structures there in issue, because not deemed here proper, it may be further stated that the Commissioner, in his decision, which subsequently was affirmed by the Court of Appeals of the District of Columbia, 54 App. D. C. 79, 294 F. 1010, held that there were differences under the construction which he gave to the counts as claims appearing in the Sachs patent, which prevented Horton making the counts of said interference as framed.

Appellant further states that during the pendency of the interference proceedings above recited and following Sachs' motion to dissolve, he, appellant, filed a divisional application of his application involved in the interference in which he "very clearly recited his definition of a 'load controlling' switch and paralleled many of the claims which had been counts of the interference."

This divisional application appears to have ripened into patent 1,548,883, August 11, 1925, after the disposition of the interference proceeding.

Appellant insists that his said patent, 1,548,883, must be considered in the present case along with the decisions determining the interference, for the purpose, as we understand it, of sustaining his contention that there has heretofore been such a construction of claims and counts upon issues so similar to the issues here involved, as to be binding upon the tribunals of the Patent Office and to render it improper for the Sachs patents to be now cited as references against the applications involved in the two appeals we are now considering.

For the proper understanding of the precise issue presented, it must be borne in mind that the identical Sachs patents cited as references against appellant's applications here involved were not involved in the interference proceedings which have been above set out. Neither were the applications here at issue there involved.

The issues here are between two patents

on the one hand and two applications on the other, which never at any time came in conflict in any interference proceeding, nor received adjudication or comparison by either the tribunals of the Patent Office, or by any court, in any proceeding of any kind or character, until cited in the ex parte cases here.

Appellant insists, however, that the Sachs structure, as disclosed and claimed in the counts of the Horton-Sachs interference, was similar to the structures in the Sachs patents, now cited as references against appellant's involved applications, and that said counts there received an interpretation or construction under which the Horton structure here involved (it being claimed to be similar to the Horton structure of the interference proceeding) would not read upon the Sachs structure, and that the doctrine of res adjudicata or that of stare decisis is here applicable.

It is obvious that to sustain the theory of appellant it would be necessary for this court to determine and adjudicate certain questions which, so far as the record discloses, were not adjudicated by either of the tribunals of the Patent Office.

We should first have to compare the Sachs structure involved in the counts of the interference proceeding with the Sachs structures disclosed and claimed by the patents cited as references in the ex parte case, and find that they are similar. We should then have to compare the Horton structure involved in the counts of the interference with the Horton structures involved in the applications before us, and determine that they are similar. Then, as a third step, we should have to compare all the Sachs and Horton devices and claims and find them to have patentable differences.

The first two questions were not passed upon in this proceeding by either the examiner or the Board of Appeals, and the comparison required by the last step was confined by them (as to the claims now being discussed) as has been stated, to certain Sachs patents on the one hand and the Horton applications on the other, neither of which were ever involved in the interference.

It does not appear to us to be within our authority to review and determine material technical questions of structure upon which the ex parte tribunals of the Patent Office have made no finding.

In its decision in case No. 2827, the Board of Appeals, among other things, said: "Appellant has quoted certain portions of the decision of the First Assistant Commission-

er in a prior interference involving the patentee Sachs and the appellant in this case. As clearly appears in the quoted portions contained on page 7 of appellant's brief in his companion application, Serial No. 627,-082, which is also before us for decision, the Commissioner gave the claims of the Sachs patent there involved a limited interpretation to sustain their validity. When so construed he held that Horton could not make the claims involved because he did not have a service and meter testing switch block as a combined structure. In the instant case the claims are the claims of an application and in order to be allowable they should distinguish in some patentable respect from the prior art. It is not seen that the Commissioner's decision on appellant's right to make the claim of the Sachs patent has any particular bearing on the question presented in this proceeding."

We perceive no error of law in this statement. The question of patentability was not involved in the interference, and there was no adjudication upon it. The fundamental issue there was the question of priority, and the case turned upon the ancillary issue of Horton's right to make the counts. These counts were claims of a patent to Sachs, and Horton in that proceeding was doubtless held bound by the meaning intended by the patentee, under the doctrine of cases such as Drey v. Peiler, 53 App. D. C. 35, 37, 287 F. 1012, 1014, where it was held that Peiler's disclosure " * * * does not come within the rule of construction that, where counts are taken from the claims of a patent, the one copying the claims is bound by the meaning intended by the patentee."

Here the issue is that of patentability over the prior art cited; the claims before us were not copied from a patent but are original to the applications involved, and we are unable to discern any sound reason why they should not be given the broadest interpretation of which they are reasonably susceptible. In the case of In re Carr, 54 App. D. C. 283, 297 F. 542, 543, the court said: "After a patent has issued, and it no longer is possible for the patentee to control the phraseology of his claims, the courts will so interpret them, if possible, as to protect him; but there is no reason as we many times have observed, why an applicant in the Patent Office should not draw his claims to cover his actual invention only. For this reason we have uniformly ruled that claims will be given the broadest interpretation of which they reasonably are susceptible. This rule is a reasonable one, and tends not only to protect

the real invention, but to prevent needless litigation after the patent has issued."

We have given careful study to the well prepared briefs of appellant, and have examined the several authorities therein cited, such as Blackford v. Wilder, 28 App. D. C. 535; In re Dement, 49 App. D. C. 261, 263 F. 813, 1920 C. D. 171; In re Marconi, 38 App. D. C. 286; In re Henderson, 50 App. D. C. 191, 269 F. 707, and numerous others, but we are unable to agree that the reasoning of any of the cited cases is applicable to the particular state of facts here appearing.

There can be no question, we think, but that, had there been no interference proceeding, there could not be a serious contention that appellant's claims now under discussion should be allowed over the cited Sachs' patents. The decisions of the examiner make specific application of the respective references to such claims of the respective applications. That, when the claims are given the broad interpretation, the references do anticipate them, is not seriously questioned. We are unable therefore to see wherein the applications of appellant are patentable, or wherein any doctrine of res adjudicata or stare decisis is applicable to render them so.

Such claims as were not distinctly and clearly anticipated by the Sachs patents (considering the cross-reference in No. 1,181,483 to the application which matured into patent No. 1,170,112) are obviously anticipated, we think, by Horton's patent 1,338,180.

It is not deemed essential to lengthen this opinion by repeating or attempting to paraphrase the technical discussions of the examiner. Reference may be had to these for a full understanding of the subject-matter of the several disclosures.

The decisions of the Board of Appeals in both cases, 2827 and 2828, are affirmed.

Affirmed.