33 C.C.P.A.(Patents)

### Application of MOORE.
### Patent Appeal No. 5139.

Court of Customs and Patent Appeals.
May 7, 1946.

Ellis S. Middleton, of New York City (Edmund H. Parry, Jr., of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 2, 3, 4, and 5 in appellant's application for a patent

for an alleged invention relating to "fumigants" for the killing of insects by exposing them to "mono substituted halogen acetonitrile."

Claims 2 and 3 were rejected on the prior art, and as being broader than the disclosure in appellant's application. Claims 4 and 5 were rejected as being drawn to non-elected species and, therefore need not be considered on their merits, as they are allowable only in the event claim 2, which is generic to claims 3, 4, and 5, is held to be patentable.

The claims are method claims. They read:

"2. A method of killing insects which includes the step of exposing the insects to a toxic amount of a mono substituted halogen acetonitrile having a boiling point less than 200°C.

"3. A method of killing insects which includes the step of exposing the insects to a toxic amount of chloroacetonitrile.

"4. A method of killing insects which includes the step of exposing the insects to a toxic amount of bromoacetonitrile.

"5. A method of killing insects which includes the step of exposing the insects to a toxic amount of iodoacetonitrile."

At the time of the examiner's statement to the Board of Appeals, appellant's application contained 13 claims, and the references relied upon by the examiner in rejecting all of the 13 claims were:

I. G. F. (British), 432,188, July 23, 1935;

Bousquet et al., 2,030,093, Feb. 11, 1936;

French patent, 816,921, May 10, 1937;

Collie et al., 2,268,108, Dec. 30, 1941;

Technical Bulletin No. 162—published in 1929 by U. S. Dept. of Agriculture. See pages 30 and 31.

In appellant's brief before the Board of Appeals it was stated that appellant acquiesced in the rejection of the Primary Examiner as to claims 1, and 6 to 13, inclusive.

Claim 1, which was withdrawn before the Board of Appeals, was rejected by the Primary Examiner on the patent to Collie et al. and the British patent. As that claim is not before us, those patents need not be considered since they were not used as references against the claims here on appeal.

It is not contended here by counsel for appellant that the mono substituted halogen acetonitrile, called for by claim 2, or the chloroacetonitrile, called for by claim 3, are new compounds.

In claim 2, which as hereinbefore noted is generic to the other appealed claims, appellant has substituted a halogen for a hydrogen in acetonitrile.

Claim 3 is a species claim in which the halogen substituted is chlorine and the compound produced is chloroacetonitrile.

"Halogen" is defined in Webster's New International Dictionary as:

" * * * Chem. An element or radical which forms salts by direct union with metals;—at present applied to chlorine, bromine, and iodine, and usually fluorine; sometimes also to cyanogen. See Chlorine family."

"Chlorine family" is defined by the same authority as:

"Chem. The elements fluorine, chlorine, bromine, and iodine, called the halogens (salt formers). They are univalent toward hydrogen, metals, and other elements, but chlorine, bromine, and iodine also form higher oxygen compounds."

In agreeing with counsel for appellant that the disclosure in the French patent should not be given great weight in the consideration of the appealed claims, the Board of Appeals said:

"Regarding the French patent, applicant urges that its teaching is that the common property of the class of compounds disclosed is due to the olefinic linkage. With this we agree, and we do not give great weight to the disclosure among his compounds of one which would contain both chlorine and a CN group."

With reference to the Bousquet et al. patent, attention was called by the tribunals of the Patent Office to a statement contained therein, reading:

"The toxicity of these lauryl derivatives also persists if the lauryl chain carries a

negative substituent such as Cl, SO3H which does not modify the straight carbon chain character of the lauryl radical."

In other words, the patentees Bousquet et al. disclosed that the substitution of a chlorine did not add to, or subtract from, the effectiveness of the insecticidal properties of their product, and it is argued by counsel for appellant that because the substitution of chlorine did not increase the toxicity of the patentees' insecticide, the patent is not a good reference.

In affirming the examiner's rejection of the appealed claims on the prior art, the board relied upon the reference Technical Bulletin No.162, published by the United States Department of Agriculture in 1929.

It clearly appears from Bulletin No. 162 that acetonitrile (methyl cyanide) is used as a "fumigant" and is effective as an insecticide. It further appears from that publication that a maximum dosage of 392mg. per liter of acetonitrile killed 90% of weevils upon exposure for twenty-four hours.

Counsel for appellant contend that, although the toxic effect of acetonitrile (methyl cyanide) had been known since 1929, "it never occurred to anyone to try a halogen substituted acetonitrile," and argue that, therefore, the appealed claims are patentable.

It appears from appellant's application, and it is not questioned by the Board of Appeals, that using chloroacetonitrile of 5mg. per liter produced a 100% kill in a period of one hour; that, as stated by counsel for appellant, "This is 1/78th of the dosage of the Bulletin [reference] for 1/24th of the time and it resulted in total destruction of the insects"; and that when the dosage was reduced to 3mg. per liter a 98.3% kill was obtained in one hour.

Without going into detail, it may be pointed out that the insecticidal properties of appellant's product are far superior to the insecticidal properties of acetonitrile (methyl cyanide) disclosed in the Bulletin reference.

It is not questioned here that chloroacetonitrile, the specific compound called for by claim 3, is, as stated by the board in its decision, "one of the simplest derivatives of methyl cyanide, having the same structure except that one hydrogen has been replaced by chlorine."

▆ Owing to the fact that the record discloses that acetonitrile (methyl cyanide) is a well-known insecticide, and as it appears from the Bousquet et al. patent that the substitution of a chlorine did not subtract from the effectiveness of the patentees' lauryl cyanide, it would seem to be obvious that when appellant used chloroacetonitrile, in which a chlorine is substituted for a hydrogen in acetonitrile (methyl cyanide), it was to be expected that it would possess insecticidal properties when used in a toxic amount. Under the circumstances, appellant's discovery that chloroacetonitrile was useful as an insecticide, or that it possessed insecticidal properties to a greater degree than acetonitrile, does not, in our opinion, involve invention.

▆ It certainly could not properly be contended that had appellant discovered that chloroacetonitrile possessed to the same degree the insecticidal properties of acetonitrile, his discovery involved invention. Having every reason to suppose that his composition would be valuable as an insecticide when used in a toxic amount, appellant is not entitled to a patent for a method of killing insects by the use of such a composition based solely on the degree of effectiveness which he found the composition possessed.

For the reasons stated, we are of opinion that appealed claims 2 and 3 were properly rejected on the prior art.

As hereinbefore noted, claims 2 and 3 were also rejected on the ground that they are broader than the disclosure in appellant's application.

Appellant states in his application that his alleged invention relates to "fumigants," and there is nothing stated therein to indicate that at the time of the filing of his application he was aware of the fact, if it be a fact, that the insecticidal properties of mono substituted halogen acetonitrile, called for by claim 2, and chloroacetonitrile, called for by claim 3, could be used otherwise than as "fumigants."

It will be observed that the claims are not limited to so-called "fumigants," but

are sufficiently broad to read upon other forms of insecticides, such as solids and liquids.

In his statement to the Board of Appeals, the Primary Examiner stated that claims 2 and 3 "are further rejected as too broad and indefinite in failing to restrict the claims to fumigation. The disclosure is restricted to fumigation only. Fumigation necessitates the use of compounds in gaseous form. * * * and there is nothing in the case to indicate that the compounds disclosed would kill insects when applied in solid or liquid form. Accordingly, the present claims are not confined to the subject matter disclosed, and fail to set forth the alleged invention with the particularity required by statute."

With reference to that ground of rejection, the Board of Appeals said:

"The rejection of claims 2 and 3 as too broad and indefinite in failing to restrict them to fumigation was not traversed in the brief, so is assumed to have been proper * * *," and entered a general affirmance of the examiner's decision.

Counsel for appellant state in their brief that they had "inadvertently omitted to set out in writing any argument with regard to the form rejection as to Claims 2 and 3, that is, because the Examiner thought they should be limited to a method of fumigation rather than a method of killing insects. This matter was argued orally before the Board and it may well be that inasmuch as the decision was written almost four months after the hearing that they did not recall the argument. It may well be that this Court will decide, as is their right, to stand on the printed Record."

(It may be said at this point that the court accepts without question the statement of counsel for appellant that the Primary Examiner's holding that the claims are broader than appellant's disclosure was argued orally before the Board of Appeals.)

With reference to that issue, counsel further state:

"The fact is that no good reason has been advanced by anyone for so limiting the claims. While toxic materials which have a boiling point below 200° C. are particularly useful as fumigants due to their comparative ease of vaporization, yet this fact alone does not exclude the ability of those materials to kill by other methods, that is, as a contact poison. The art of record being absolutely silent as to the use of the killing agents by any method, no reason is seen why the Applicant is not entitled to claim the killing of insects with them no matter what the specific method. This requirement is thought to be unreasonable and unjustified."

It may be, as argued by counsel for appellant, that appellant's compounds "are particularly useful as fumigants due to their comparative ease of vaporization," and that that fact does not "exclude the ability of those materials to kill by other methods, that is, as a contact poison." However, appellant's application is limited, as stated by the Primary Examiner and as hereinbefore noted, to so-called "fumigants," and there is nothing in the application to indicate that appellant's composition would kill insects when applied in either solid or liquid form. On the contrary, appellant states in his application that his alleged *invention in its broadest aspect* is concerned with the discovery that all members of the generic class of mono substituted acetonitriles which have a boiling point below 200°C. *are useful as fumigants.*" (Italics not quoted.) Furthermore, as stated in the brief of the Solicitor for the Patent Office, "the function of a claim is not to cover everything as to which the prior art is silent, but to point out what the applicant has invented."

It is well settled that claims in an application which are broader than the applicant's disclosure are not allowable. See In re Bryson D. Horton, 54 F.2d 961, 19 C.C.P.A., Patents, 871, 875; In re Thompson, 135 F.2d 930, 30 C.C.P.A., Patents, 1058, 1062.

We are of opinion that appealed claims 2 and 3 are broader than the disclosure in appellant's application and that they were properly rejected for that reason. Accordingly, the decision of the Board of Appeals, affirming the decision

of the Primary Examiner rejecting claims 2 and 3 on the prior art and on the ground that they are broader than the disclosure in appellant's application, is affirmed.

Affirmed.