**Application of Oskar SUS and Werner Schaefer.**

**Patent Appeal No. 6778.**

United States Court of Customs
and Patent Appeals.
July 25, 1962.

James E. Bryan and Thomas, Cricken-
berger & Bryan, Washington, D. C., for
appellants.

Clarence W. Moore, Washington, D. C.
(Jack E. Armore, Washington, D. C., of
counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, RICH,
MARTIN and SMITH, Judges, and
Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

The comparatively simple legal issue
which emerges from the rather complex
technical aspects of the application in-
volved in this appeal is whether the re-
jected claims are broader than the writ-
ten description of the invention and thus
do not meet the requirements of 35
U.S.C. § 112.[1]  The examiner and the
board have held that they do not.  Ap-
pellants contend on this appeal that they
do.  For reasons to be more fully set
forth in this opinion, we agree with the
board.

The claims on appeal are claims 24, 26,
30, 36, 38, 42, 48, 50, 54, 62 and 66 of
appellants' application Serial No. 430,-
978, filed May 19, 1954, entitled "Light
Sensitive Material and Process."  Four
claims, 33, 45, 57 and 69 have been al-
lowed by the examiner.  The remaining
claims of the application have been with-
drawn from consideration as not reading
on the elected species.

* United States Senior District Judge for
the Eastern District of Pennsylvania, des-
ignated to participate in place of Judge
O'CONNELL, pursuant to provisions of
Section 294(d), Title 28 United States
Code.

1.  The pertinent portions of 35 U.S.C. § 112
to be here considered are :

"The specification shall contain a writ-
ten *description of the invention* * * *.

"The specification shall conclude with
one or more claims particularly pointing
out and distinctly *claiming the subject
matter which the applicant regards as
his invention.* * * * "  [Emphasis add-
ed.]

The written description of the invention found in the specification shows that it relates to a class of light-sensitive organic compounds, known as aryl azides or aromatic azido compounds, and to the employment of these compounds as coatings on planographic printing plates particularly for use in offset flat printing by a photo-mechanical process.

Appellants acknowledge that use of the broad class of such light-sensitive materials was known previously, but assert in the specification that:

"Such a process is very troublesome, however, and has been superseded by methods in which the greasy printing ink adheres to some parts of the originally light-sensitive substance itself, either by the light-sensitive substance itself forming the printing image, or by the image being formed of the light-decomposition products of the light-sensitive substance resulting from the exposure. *Those aryl azides previously suggested have proved to be incapable of being suitable in such a process.*" [Emphasis added.]

The specification states an object of the invention is "the obtention of *certain new groups of aryl azides.*" [Emphasis added.]

The specification discloses light-sensitive aromatic azido compounds which are substituted in the nucleus containing the azido group either by (1) a sulfo group amidated with an aromatic amine or (2) by a primary amino group substituted with the sulphonyl residue of an aromatic sulpho acid.

A pre-sensitized printing plate is produced by first coating a metal base, preferably aluminum foil, with a layer of a disclosed light-sensitive aryl azide. The coating is formed by applying to the base a solution of the azide in an organic solvent and subsequently evaporating the solvent. The resulting pre-sensitized plate is then exposed to a light source under a transparent master and developed as disclosed in appellants' brief as follows:

" * * * the image is developed by treatment of the light exposed layer with a dilute alkaline solution. This treatment removes from the aluminum, or other foil, the light decomposition products of the aromatic azido compound in those areas struck by light. The relief image is then generally treated with a dilute phosphoric acid solution, after which the developed printing plate may be clamped into an offset printing machine and used for the production of copies."

The claims on appeal may be grouped in four groups according to subject matter as follows:

1. Claims 24, 26 and 30 which define the light-sensitive compounds per se;

2. Claims 36, 38 and 42, which are drawn to a process for the production of a pre-sensitized printing plate in which the single step claimed is coating a base material with a layer of the claimed light-sensitive compounds;

3. Claims 48, 50, and 54, which are drawn to a process for the production of a printing plate and define, in addition to the coating step of claims 36, 38 and 42, the additional steps of exposing the coated base to light under a master and of treating the exposed base with a weakly alkaline solution;

4. Claims 60, 62 and 66, which are drawn to a pre-sensitized printing plate comprising a base coated with the compounds of claims 24, 26 and 30, respectively.

In addition to rejecting certain claims on the art, the board affirmed the rejection of all the appealed claims as failing to particularly point out and distinctly claim the alleged invention, stating:

"The claims have been further rejected as being unduly broad in the terms 'substituted aryl' and 'substituted arylene'. The examiner points out that any substituent is included in this recitation and that ap-

pellants' contentions for patentability are thus based merely upon the fact that the aryl or arylene nucleus is substituted, without regard to the nature of the substituent."

While we do not find it necessary to review the rejection of the claims as unpatentable over the prior art in the view we here take, it is necessary to a better understanding of the rejection under 35 U.S.C. § 112 which we are here affirming, to know the historical background of the invention as revealed by the cited references.

The references relied on are:

| Schmidt et al. | 1,845,989 | Feb. 16, 1932 |
| Neugebauer et al. | 2,692,826 | Oct. 26, 1954 |
| | (filed October 3, 1950) | |
| Kalle (French) | 886,716 | July 12, 1943 |

Schmidt et al. disclose that light-sensitive layers may be produced on a base, for instance paper or film, by applying a weakly alkaline solution of an aryl azide to the base, followed by exposure of the coated base to light through a master such as a negative, whereupon dyestuffs (colored light-decomposition products) are formed on those portions exposed to the light while the unexposed portions remain unaltered. A positive picture is obtained, which is washed to be rendered permanent. The structure of the aryl azide light-sensitive compounds is disclosed broadly to consist of an aromatic azido substituted ring which may be further substituted in the other positions on the ring with such groups as hydroxyl, carboxyl, azido, halogen, aryl, aralkyl, oxalkyl, or alkyl as well as an amino group, substituted or not, or a sulfo group.

Neugebauer et al. disclose the preparation of photo-lithographic printing plates for use in the flat printing process comprising coating a zinc or aluminum base with a layer of a light-sensitive aryl azide, exposing the coated base to a light source under a master and subsequently removing either the exposed or unexposed portions of the coating. The disclosure refers to the preparation of images by the action of light on light-sensitive aromatic azido compounds, including the aromatic di-azido compounds which are said to be particularly useful. Neugebauer et al. disclose a number of examples employing diazidostilbene disulfonic compounds as the light-sensitive substances.

The French patent discloses that the aromatic azides are known to be light-sensitive, and discloses a preferred group of these compounds which may be applied as a layer on a support, for example, paper, glass or metal, and thereafter exposed to light under masks or negatives and then, after known treatment, employed for reproduction or photographic purposes. The patent indicates that the process may be applied to a zinc plate to prepare a typographical printing plate. Among the light-sensitive compounds listed is the 4,4'-diazidostilbene-2,2'-disulfonic acid sodium salt compound disclosed by Neugebauer et al., supra.

The mandate of 35 U.S.C. § 112 is that: "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

The failure here to so claim the invention is fatal. This failure becomes

apparent from a consideration of the appealed compound claims. The most specific of these claims is claim 26 which reads as follows:

"26. A compound having the formula

N_3 —⟨ ⟩— CH = CH —⟨ ⟩— N_3 with SO_2—NH—R and SO_2—NH—R_1 substituents

in which R and R$_1$ are selected from the group consisting of <u>aryl and substituted aryl radicals.</u>" [Emphasis added.]

---

The broadest of the appealed compound claims, claim 30, reads as follows:

"30. A compound having the formula

$$N_3-R-X-Y-R_1$$

in which R is a substituted arylene radical, X and Y are selected from the group consisting of —NH— and —SO$_2$—radicals and are different and R$_1$ is selected from the group consisting of *substituted and unsubstituted aryl radicals.*" [Emphasis added.]

Compound claim 24, intermediate in scope between claims 26 and 30, uses as does claim 26, the term "aryl and substituted aryl radicals".

All of the other claims on appeal call for the compounds of claims 24, 26 and 30, supra, including the phrase "aryl and substituted aryl radicals"[2] which the board held to be unsupported by the specification. Thus, our decision as to whether the board properly affirmed the examiner's rejection of the compound claims for lack of support in the specification is dispositive of all claims on appeal.

■ While the term "aryl and substituted aryl radicals" is a broad term, it is not objectionable for this reason alone if the term is (1) supported by the specification, and (2) if it properly defines the novel subject matter described in the specification. The public purpose on which the patent law rests requires the granting of claims commensurate in scope with the invention disclosed. This requires as much the granting of broad claims on broad inventions as it does the granting of more specific claims on more specific inventions. It is neither contemplated by the public purpose of the patent laws nor required by the statute that an inventor shall be forced to accept claims narrower than his invention in order to secure allowance of his patent. It is, however, consistent with this public purpose embodied in the pertinent statutory requirement that the *invention claimed* shall be no broader than the *invention set forth* in the written description forming a part of the specification.

■ As we view the appealed claims they fail to meet the requirements of 35 U.S.C. § 112 in that they are broader than the invention described in the written description thereof as set forth in the specification. The terms "aryl and substituted aryl radicals" or "substituted and unsubstituted aryl radicals" as used in the rejected claims do not particularly

---

2. Claims 42, 54 and 66 call for "substituted and unsubstituted aryl radicals" as does claim 30. We regard this as an equivalent expression for "aryl and substituted aryl radicals" used in the other claims.

point out and distinctly claim the particular aryl azides, the "obtention" of which is one of the stated objects of the invention, and the use of which appears to be essential to securing the asserted novel results on which applicants have predicated their right to a patent.

When we turn to respected authorities to find a definition of these terms, we find differences as to the meaning of "aryl".[3] When we look to the specification to see what applicants may have meant by the use of this term, we find:

"* * * the terms "aryl" or "alkyl" are understood to include both substituted as well as unsubstituted aryl or alkyl, respectively, and may bear one or several substitutents as may be seen from the numerous compounds enumerated in the description and the examples."

To encompass all the possible meanings of "aryl", since no particular meaning has been ascribed to it in the specification, we must give the term its broadest possible meaning in determining just what appellants are claiming as the subject matter which they regard as their invention.

Some further suggestion as to what appellants regard as their invention is found in the following excerpt from the specification which states:

"The present invention provides a process for the photo-mechanical production of planographic printing plates, especially suitable for offset printing, wherein the light-sensitive material, consists of a base and a light-sensitive layer, and the light-sensitive layer consists essentially of *aromatic azido compounds which are substituted in the nucleus containing the azido group either by a sulpho group amidated with a primary aromatic amino or by a primary amino group substituted with the sulphonyl residue of an aromatic sulpho acid.* This material is then exposed under a master, treated with a dilute alkaline solution and further treated with dilute acids. Preferably the base comprises aluminum foil and the dilute acid is phosphoric acid. If desired, alkali-soluble non-hardenable resins may be included in the light-sensitive layer." [Emphasis added.].

To carry out the invention so disclosed, the minimum requirements which the "aryl and substituted aryl radicals" in the compounds must possess are:

1. They must be light-sensitive when exposed "to one of the light sources normally used in the art".

2. After exposure, they must react with a dilute alkaline solution to develop a light formed image therein.

3. The plate carrying the exposed and developed image must respond to further treatment with dilute acids, preferably phosphoric acid.

We also find a fourth requirement for the compounds stated in the specification:

"The aromatic azido compounds which are, according to the inven-

3.  aryl * * * 1: a univalent aromatic radical (as phenyl or tolyl) derived from an arene by removal of one hydrogen atom from a carbon atom of the nucleus—compare aralkyl 2: a compound of one or more aryl radicals with a metal <sodium ~ *> (Webster's Third New International Dictionary).
    *aryl*—Any univalent aromatic hydrocarbon radical, as phenyl or tolyl, whose free valence belongs to the nucleus and not to a side chain. (Webster's New International Dictionary, 2nd Ed.).
    *aryl*—An organic radical derived from an aromatic hydrocarbon by the removal of one hydrogen atom; e. g., phenyl from benzene, tolyl from toluene, salicyl from salicylic acid. Cf. *alkyl*. (Hackh's Chemical Dictionary, Third Ed., p. 78).
    *aryl compounds*—Those whose molecules have the ring structure characteristic of benzene, naphthalene, phenanthrene, anthracene, etc., i. e., either the six-carbon rings of the other aromatic derivatives. For example, an aryl radical might be phenyl, $C_6H_5-$; benzyl, $C_6H_5CH_2-$; naphthylene, $C_{10}H_6=$; etc. (The Condensed Chemical Dictionary, Sixth Ed., p. 112).

tion, to be used as light-sensitive substances, *are insoluble in water* but *soluble* in *organic solvents."* [Emphasis added.]

Reading further in the specification we learn it is either "the light-decomposition products of the aromatic azido compound in those areas *affected* by light during exposure" [emphasis added] or the parts of the light-sensitive layer which were *unaffected* by the light exposure which are to be removed by treatment with the dilute alkaline solution.

We also learn from the specification:

"The difference which exists between the azido compounds to be used according to this invention, and their light-decomposition products, in their solubility in dilute alkaline solutions, can be influenced by *substituents."* [Emphasis added.]

Following these disclosures in the specification are 26 graphic formulas which show the "aryl and substituted aryl radicals" referred to in 17 examples which are included in appellants' specification to "illustrate methods of carrying the invention into effect".

In view of the emphasis appellants have here placed on the alleged breadth of their invention and on the alleged breadth of the disclosures supporting the questioned terms in the rejected claims, we have deemed it advisable to include in this opinion all of the following formulas which, as can be seen by persons skilled in this art, do not disclose "aryl and substituted aryl radicals" generally as called for by the claims. Many of such radicals and classes of radicals are neither shown nor indicated in these formulas. The specification contains nothing else which further supplements these examples as support for the claims.[4] We shall, therefore, pass upon the rejection with the following formulas considered as the supporting disclosure for the claims.

4. The record here does not indicate what, if any, original claims used the terms in issue. Under Sec. 706.03(n) of the Manual of Patent Office Examining Procedure, if an original claim contained the broader disclosure required to support the questioned terms in the appealed claims, such subject matter should have been added to the specification.

1

$N_3$ —CH=CH— $N_3$
$SO_2$  $SO_2$
NH  NH

2

$N_3$ —CH=CH— $N_3$
$SO_2$  $SO_2$
NH  NH
$CH_3$  $CH_3$

3

$N_3$ —CH=CH— $N_3$
$SO_2$  $SO_2$
NH  NH
$CH_3$  $CH_3$  $CH_3$  $CH_3$

4

$N_3$ —CH=CH— $N_3$
$SO_2$  $SO_2$
NH  NH
$HO-CH_2-CH_2-O$  $O-CH_2-CH_2-OH$

5

$N_3$ —CH=CH— $N_3$
$SO_2$  $SO_2$
NH  NH
$OCH_3$  $OCH_3$

6

$N_3$ —CH=CH— $N_3$
$SO_2$  $SO_2$
NH  NH
OH  OH

7

$N_3$ —CH=CH— $N_3$
$SO_2$  $SO_2$
NH  NH
COOH  COOH

8

$N_3$ —CH=CH— $N_3$
$SO_2$  $SO_2$
NH  NH
CO  CO

**9**

$N_3$—(cyclohexane)—NH—(cyclohexane), with SO$_2$—NH—(decahydronaphthalene)

**10**

$N_3$—(cyclohexane)—NH—(cyclohexane), SO$_2$—NH—(cyclohexane)

**11**

$N_3$—(cyclohexane)—NH—(cyclohexane), NH—SO$_2$—(cyclohexane)—CH$_3$

**12**

(cyclohexane)—NH ... $N_3$—(cyclohexane)—SO$_2$—NH—(cyclohexane)—NH—SO$_2$—(cyclohexane)—$N_3$ ... NH—(cyclohexane)

**13**

NH—(cyclohexane) ... $N_3$—(cyclohexane)—SO$_2$—NH—(cyclohexane)—CO—(cyclohexane)—NH—SO$_2$—(cyclohexane)—$N_3$ ... NH—(cyclohexane)

**14**

(cyclohexane)—NH ... $N_3$—(cyclohexane)—SO$_2$—NH—(decahydronaphthalene)—NH—SO$_2$—(cyclohexane)—$N_3$ ... NH—(cyclohexane)

**15**

(cyclohexane)—NH ... $N_3$—(cyclohexane)—SO$_2$—NH—CH$_2$—CH$_2$—NH—SO$_2$—(cyclohexane)—$N_3$ ... NH—(cyclohexane)

**16**

CH$_3$—(cyclohexane)—SO$_2$—NH—(decahydronaphthalene)—$N_3$

**17**

(cyclohexane)—SO$_2$—NH—(decahydronaphthalene, $N_3$)—NH—SO$_2$—(cyclohexane)

18

19

20

21

22

23

24

25

$N_3$-[naphthalene]-$SO_2$-$NH$-[benzene]-$NH$-$SO_2$-[naphthalene]-$N$,

26

$OC_2H_5$ ... $OC_2H_5$

$N_3$-[benzene]-$SO_2$-$NH$-[benzene]-$NH$-$SO_2$-[benzene]-$N_3$

$OC_2H_5$ ... $OC_2H_5$

---

If we apply claim 26 to the examples shown in the above formulas, it will be seen that it is exemplified only by formulas 1–8, inclusive, and 21. We note the term "aryl"[5] as used in claim 26 is broad enough to include multi-ring compounds but we find in these nine examples only single ring compounds.

Claim 30 applies to all the formulas. The aryl radicals shown in the formulas have either a single or a double fused ring. The formulas, however, do not disclose other multiple ring type aryls which would be included within the broad term "aryl" as used in claim 30.

We pass now to the term "substituted aryl radical" which we find in all the appealed claims. Taking the 26 graphic formulas of the compounds we find the substituents therein to be far more limited than is required to support the broad terminology used in the claims. Looking first to formulas 1–8 and 21 as support for claim 26, the substituents on the single ring aryl there shown, are as follows:

1. None
2. $CH_3$
3. $2-CH_3$
4. $-OCH_2CH_2OH$
5. $-OCH_3$
6. $-OH$
7. $-COOH$
8. $-CO-$[benzene]
21. $-N_3$

---

It is noted, for example, that except for the substituent in formula #3, all substituents are in the same ring position relative to the point of ring attachment to the rest of the molecule.

In applying the substituents shown in the 26 formulas as support for claim 30, we note that the claim applies to all the examples with the possible exception of example 15. Noting that the "aryl" radical which can be "substituted" can be either a single ring or two fused rings, the examples are far more limited than is required to support the broad claim terminology. Examples 1, 9, 10, 17, 18, 20 and 22 show no substituent, while examples 2, 11, 16 and 19 show the same substituent, $-CH_3$, in the same ring position relative to the point of attachment to the rest of the molecule. Examples 2

5. See footnote 3, supra.

through 8 and 21 contain the substituents listed above in our analysis of claim 26. Of the remaining eight examples, examples 12 through 15 have a common dominant structural feature and examples 23, 24 and 26 have a common dominant structural feature.[6] The remaining example, example 25, is similar in structure to examples 12 through 15.

Thus, it seems to us that one skilled in this art would not be taught by the written description of the invention in the specification that any "aryl or substituted aryl radical" would be suitable for the purposes of the invention but rather that only *certain aryl radicals* and certain specifically substituted aryl radicals would be suitable for such purposes.[7]

We therefore agree with the board that:

"  *   *   *   While in this application numerous examples of sensitizing agents which contain substituents in the arylene nucleus have been disclosed the examples *are of compounds of the same general type, along a narrow line.* We find no basis for concluding or predicting that any substituent may be included without affecting the sensitizing action of the azide so as to destroy the usefulness of the compound." [Emphasis added.]

As above indicated, we think one skilled in this art would not be taught by these examples that all "aryl and substituted aryl radicals" were properly within the subject matter which appellants consider to be their invention. Yet if such a person were to look at the rejected claims, he would find that this is exactly what appellants seek to foreclose to him.[8]

[6] Common to examples 12 through 15 is $-NH-SO_2$ (structure with $N_3$)

Common to examples 23, 24 and 26 is $-SO_2-NH-$ (structure with $OC_2H_5$, $N_3$, $OC_2H_5$)

7. We question also whether all "aryl and substituted aryl radicals" would produce light-sensitive aromatic azides insoluble in water but soluble in organic solvents as is required by the invention disclosed in the specification. The Kalle (French) patent discloses that:

It is possible to render azides soluble in water, in a known manner, by introducing into the molecule appropriate groups, for example sulfonic or carboxylic groups.
See also Organic Chemistry, Fieser & Fieser, 3rd Ed., p. 589. Some substituted radicals undoubtedly would adversely affect the light-sensitive properties of the compounds and thus prevent use of the compound for their disclosed purpose. In this event, the compounds would not possess the asserted utility. Cf. In re Cavalitto & Gray, 282 F.2d 357, 48 CCPA 711.

8. Cf. Merrill v. Yeomans, 94 U.S. 568, 24 L.Ed. 235 and note particularly the following:

"The growth of the patent system in the last quarter of a century in this country has reached a stage in its progress where the variety and magnitude of the interests involved require accuracy, precision, and care in the preparation of all the papers on which the patent is founded.  *   *   * The developed and improved condition of the patent law, and of the principles which govern the exclusive rights conferred by it, leave no excuse for ambiguous language or vague descriptions. The public should not be deprived of rights supposed to belong to it, without being clearly told what it is that limits these rights.  *   *   * It seems to us that nothing can be more just and fair, both to the

■ We have considered the record herein and have expressed our views thereon at some length in this opinion to preclude some future extraction of asserted "principles" of this case which can be incorporated in some possible future "rule" which would state that an applicant cannot claim his invention broadly by the use of such terms as "aryl and substituted aryl radicals". We want it to be clear and without question that our holding in this case is based on its particular facts and is simply this: An applicant cannot under 35 U.S.C. § 112 claim a broader invention than that set forth in the written description contained in his specification. As stated by this court in In re Moore, 33 CCPA 1083, 155 F.2d 379:

> "It is well settled that claims in an application which are broader than the applicant's disclosure are not allowable. See In re Bryson D. Horton, 54 F.2d 961, 19 C.C.P.A., Patents, 871, 875 [12 U.S.Pat.Q. 221]; In re Thompson, 135 F.2d 930, 30 C.C.P.A., Patents, 1058, 1062 [57 USPQ 547]."

While we have elected to discuss in this opinion only the term "aryl and substituted aryl radicals" (or the equivalent expression "substituted and unsubstituted aryl radicals"), as an illustration of what we find to be the fatal defect running through all the appealed claims, we have noted other terms used in certain of the claims such as "substituted alkylene radicals", which also appear to be broader than the supporting disclosure in the specification. We do not, however, deem it necessary to prolong this opinion by a largely repetitious adaptation of our holdings herein to such other terms.

We think no useful purpose would be served in attempting here to compare such non-statutory claims with the cited references. It is sufficient to say that they cannot be read with the inclusiveness required by their broad language without eliminating therefrom the distinctions over the prior art which are here asserted by appellants as their invention.[9]

We therefore affirm the holding of the board since we find the appealed claims are unpatentable under 35 U.S.C. § 112.

Affirmed.

---

patentee and to the public, than that the former should understand, and correctly describe, just what he has invented, and for what he claims a patent."

9. Cf. United Carbon Company and United Carbon Company, Inc. v. Binney & Smith Company, 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232.