50 CCPA

**Application of Charles T. FUETTERER.**

**Patent Appeal No. 6897.**

United States Court of Customs and Patent Appeals.

June 28, 1963.

John Mahoney, Cleveland, Ohio (J. Harold Kilcoyne, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Associate Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 38–49 in application Ser. No. 498,089, entitled "Tire Treads and Rubber Stock Therefor." The claims stand rejected solely as "failing to define the alleged invention properly." More specifically, claims 38, 40, 42, 44, 46, and 48 have been rejected as "indefinite and ambiguous" and all claims as "unduly broad and functional."

Appellant's invention relates to a tread stock usable, for example, in vehicle tire treads which are alleged to "improve the traction of * * * tires when they engage a road or pavement which is wet or which is wholly or partly covered with a water-containing substance, such as snow or ice."

Appellant describes his invention as follows:

"In accordance with the present invention, a carbohydrate, a protein, or mixture thereof, which is insoluble or which is only slightly soluble in cold water but which forms a colloidal suspension therein, together with one or more inorganic salts which are effective in maintaining the carbohydrate, protein, or mixture thereof, in colloidal suspension in the film of water which forms around the tire tread when the tire engages a wet or icy road or pavement,[1] are incorporated in a finely divided state in rubber, together with the other compounding ingredients which have previously been utilized in combination with rubber, to form the rubber stock for forming the tire tread.[2] "

Claim 38 is representative and reads as follows:

"38. A rubber stock for producing tire treads including as the base portion a major proportion of rubber, a sufficient amount of a vulcanizing agent to vulcanize the rubber, and a reinforcing agent in an amount sufficient to provide a tread stock having high abrasive resistance, said rubber stock also including in addition to the base portion a mixture of a nonadhesive protein and a carbohydrate[3] which mixture is substantially insoluble in cold water and which is homogenously [sic] distributed throughout the base portion of the rubber stock, said mixture of carbohydrate and protein being approximately of a particle size that is fine enough to pass through a 300 mesh screen and being present in an effective amount ranging from more than incidental[4]

1. Appellant discloses what "inorganic salts" are suitable in the following manner:
"I also add to the rubber stock one or more inorganic salts which are effective in maintaining the carbohydrate, the protein, or mixture thereof, in colloidal suspension in the film of water which surrounds the tire when it engages a wet or icy road or pavement. For this purpose, I may utilize a sodium salt, such as sodium carbonate, tricalcium phosphate, magnesium carbonate, or calcium carbonate."

2. The operation of appellant's tire stock to achieve its intended purpose is described as follows:
"* * * slipping or skidding of the tire will * * * produce wear upon the tire and a small amount of the carbohydrate or protein, or a mixture thereof, will form a colloidal suspension in the film of water and will be maintained in colloidal suspension therein by the inorganic salt which is present, thereby reducing the lubricating properties of the film of water to thus provide good traction between the tire and the road or pavement on which it is being driven."

3. Reference to the use of (1) a protein *and* a carbohydrate is made in claims 38, 39, 44, and 45; (2) only a carbohydrate in claims 40, 41, 46, and 47; and (3) only a protein in claims 42, 43, 48, and 49. We disregard these differences in the claims inasmuch as appellant has not attached any significance thereto.

4. Claims 38, 40, 42, 44, 46, and 48 designate the lower limit of the added carbo-

impurities up to 20% by weight of the base portion of the rubber stock, and an inorganic salt that is capable of holding a mixture of said carbohydrate and protein in colloidal suspension in water, said inorganic salt being in a sufficiently finely divided state to form a homogenous [sic] mixture with the base portion of the rubber stock and being homogenously [sic] distributed throughout the base portion of the rubber stock and being present in an effective amount ranging from more than incidental [5] impurities up to 20% by weight of the base portion of the rubber stock and in an amount sufficient to hold the mixture of carbohydrate and protein in colloidal suspension in a film of water which forms around a tire tread composed of the stock when the tread rotatably engages a wet or icy road or pavement and small particles of the base portion of the rubber stock and small particles of the carbohydrate, protein, and the inorganic salt are worn from the tread."

### The Definiteness of the Claims

The rejection of claims 38, 40, 42, 44, 46, and 48 as indefinite and ambiguous was set forth by the examiner in his answer as follows:

"The recitation 'present in an effective amount ranging from more than incidental impurities,' limiting the amount of salt, protein and/or carbohydrate present is indefinite and ambiguous since it is neither apparent how much constitutes an effective amount nor is it obvious what constitutes an incidental impurity."

The board, while ostensibly affirming this rejection, noted that the portion of the claims quoted by the examiner did not make the tire tread stock recited therein distinguishable from that disclosed by Davis et al.,[6] a reference considered by the examiner to be inapposite to the claims now before us.

After considering the Davis et al. disclosure in detail, we are unable to see its pertinence to the claims in their present form. This conclusion finds support in the failure of the solicitor to do more than note the existence of the Davis et al. reference and mention in a cursory fashion the manner in which the board made use of it in "affirming" the examiner.

The essence of the Patent Office rejection on indefiniteness is that a recitation in the *claims* of "an effective amount ranging from more than incidental impurities" would place an "undue burden * * * upon the public, to determine the operable proportions."

We think the examiner's rejection of the instant claims as failing to *enable* the public "to determine operable proportions" is misplaced. Such is the function of the *invention description* and not that of the claims.[7] Appellant stated before

---

hydrate and/or protein as being of "more than incidental" amount—claims 39, 41, 43, 45, 47, and 49 set this lower limit at 5% by weight of the rubber tread stock. Because of the 5% limitation in the latter claims, only the former have been rejected as indefinite and ambiguous.

5. See note 4, supra.

6. Davis et al., "Chemistry and Technology of Rubber", published by Reinhold Publishing Corporation, 1937, pages 18, 20, 26, 27 and 53. The examiner's reliance on Davis et al., a reference newly cited in his answer, was based on the premise that claims which "merely recite a stock which includes rubber, a protein and/or a carbohydrate, and an inorganic salt while the specification, at pages 7 and 8,

teaches that the alleged invention lies in adding the protein and/or carbohydrate and the inorganic salt to a rubber stock" do not distinguish over "natural rubber." Appellant thereupon amended the instant claims to state that the nonadhesive protein and/or carbohydrate in his tire tread stock were "in addition to" such substances which might occur in "the base portion" of the stock. The examiner, thereupon, considered as "overcome" that portion of his answer which relied on Davis et al.

7. If support need be cited for this, see Robinson on Patents, Vol. II, particularly at § 483 (pp. 72–73) and § 504 (pp. 110–111). Also, 35 U.S.C. § 112 clearly indicates, in its *first* paragraph, that it is

the board that when "any amount of the non-adhesive protein, carbohydrate, or a mixture thereof, is present, some effect will be obtained." The Patent Office does not dispute this statement. As in the case of In re Gay, 309 F.2d 769, 50 CCPA 725, when we consider what appellant's invention really is, we find that appellant has clearly stated *in the written description of his invention* that a particular aspect thereof is not crucial, in this instance that one could vary within wide limits the amounts of non-adhesive protein and/or carbohydrate and still achieve an operable form of his invention. We do not consider pertinent to the instant rejection, which is not based on prior art, the obvious fact that if extremely small quantities of carbohydrate and/or non-adhesive protein were used the "effect * * * obtained" would be extremely small. Accordingly, insofar as the instant rejection on indefiniteness and ambiguity may be considered to be based on the failure of appellant to comply with the requirements of the *first* paragraph of 35 U.S.C. § 112, we are not persuaded that any "undue burden" is placed on the public by appellant's disclosure. We therefore reverse the rejection of claims 38, 40, 42, 44, 46, and 48 as indefinite and ambiguous.

*The Undue Breadth and Functionality of the Claims*

This rejection was set forth by the examiner in his answer as follows (emphasis ours):

"The recitation 'inorganic salt that is capable of holding a mixture of said protein and/or carbohydrate in colloidal suspension' is unduly broad and functional. 'Inorganic salt' reads on literally thousands of materials, many of which would *not be operative* for applicant's purpose. For example, some salts *could* readily react with the other ingredients in the composition while other salts *could* be corrosive or destructive of the rubber. This recitation is functional since it merely describes how the salt functions as the surface of the tire wears away. It is well established that claims should set out what the materials are and not by what they do. In re Fullam 1947 C.D. 352 [34 CCPA 1018, 161 F.2d 247, 73 USPQ 399]."

The board affirmed this portion of the examiner's rejection, stating:

"While the Examiner has not specifically listed any salt as being inoperative, his rejection is not based upon the ground of inoperativeness *per se* but rather upon the inordinate breadth of the claimed salts when it is not apparent from the disclosure of only four salts what other salts would be suitable to serve the function asserted and required by the claims."

### (a) Functionality

"Functional" language in claims is not expressly condemned by the patent statutes. On the contrary, the only portion of Title 35, U.S.C., which makes any reference to the use of statements of function specifically authorizes such use.[8] If

---

the function of the "written description" of the invention to "enable" one skilled in the pertinent art to "make and use" the invention, and, in its *second* paragraph, that the claims have a separate and distinct function, namely, particularly to point out and distinctly claim what "applicant regards as his invention."

Both the invention description and the claims form parts of a patent application's "specification." 35 U.S.C. § 112. However, inasmuch as the remainder of this opinion deals to some extent with the problem of analyzing the relationship that exists between the invention description

and the claims, the word "specification" will not be used.

8. The third paragraph of 35 U.S.C. § 112 reads:

"*An element* in a claim *for a combination* may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." [Emphasis ours.]

we are to affirm the Patent Office rejection based on "functionality," therefore, we must do so on the basis that (1) the type of "functionality" involved here is neither comprehended nor authorized by the third paragraph of 35 U.S.C. § 112 and (2) there exists a body of extra-statutory case law which specifically condemns the type of "functionality" involved in the instant claims.[9]

The board stated, as previously noted, that "Since the alleged novelty appears to reside in the result desired to be obtained by the salts, it is not proper to define the salt by what it is supposed to do rather than what it does."[10]

The sole cited support for the board's position was the Fullam case, supra, a 1947 decision of this court which we feel involved a phase of the "functionality" question which is inapposite to the instant case.

In the Fullam case, this court stated that some claims were properly rejected as "functional in claiming merely the desired result well known to and sought after by workers skilled in the art." Claims directed *merely* to a "desired result" have long been considered objectionable primarily because they cover any means which anyone may ever discover of producing the result. See, e. g., O'Reilly v. Morse, 15 How. 62, 14 L.Ed. 601; Heidbrink v. McKesson, 290 F. 665.

The desired result of appellant's invention is limiting the skidding of a tire tread stock on a wet surface. Appellant, in the claims before us, is not claiming this result. A myriad of alternative means for achieving this result can be easily thought of which would not require the particular combination of substances claimed by appellant. Insofar, therefore, as a "functional" claim may mean one which covers all means of arriving at the desired result, although the means by which such result is obtained is entirely different from that disclosed by the applicant, it is apparent that appellant's claims are not "functional."

This court in the Fullam case affirmed the rejection of certain other method claims on the basis that a polishing material recited therein was defined "not in terms of *what it is*, but of what it does. [Emphasis ours.]" This court cited General Electric Co. v. Wabash Appliance Corp. et al., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402, to support this proposition.

It was in the Wabash case that the Supreme Court condemned the use of "conveniently functional language at the exact point of novelty." The "exact point of novelty" in the Wabash case resided in statements in the claims which "distinguished [the large grained tungsten filament there involved] from the old art solely by its tendency to remedy the problems in the art met by the patent." Aside from such statements, the Supreme Court specifically held that the claims "aptly * * * describe the product of earlier manufacture."

In the instant case appellant's "exact point of novelty" is a *new combination*

---

9. One of the primary problems we have in coming to grips with the instant rejection is in what sense the word "functional" is being used. Few words in patent law have acquired more diverse meanings than the word "functional." Ellis, for example, in his "Patent Claims" (1949) at §§ 255–276 discusses at least five. It is for this reason that bandying about and lifting out of context statements referring to "functional" expressions, has, as Ellis euphemistically puts it, "caused confusion." In addition to Ellis, supra, some of the more recent texts which outline the confusion that exists in the case law with regard to what are "functional"

statements, and how they should be treated, are:

Glascock and Stringham, Patent Law, pp. 315–324 (1943) Hoar, Patent Tactics and Law, pp. 116–118 (3rd ed., 1950) Stringham, Patent Claim Drafting, pp. 215–243 (1952) Deller's Walker on Patents, particularly at § 168 (as supplemented to 1962).

10. This statement, if correct, would lead appellant into somewhat of an impasse—statements indicating what an entity is "supposed to do" *as well as* statements indicating what that entity "does" may *both* be "functional."

of substances constituting a rubber tire tread stock. This combination is distinguishable "from the old art" in that, inter alia, it is new, i. e., no evidence exists that it describes a "product of earlier manufacture." The tendency of appellant's combination to remedy the tire skidding problems in the art is not even mentioned in the appealed claims.

It is true that appellant's inorganic salt *is* defined in terms of "what it does" rather than "what it is." We note, however, that the Supreme Court, in a seldom quoted passage in the Wabash case, stated:

"A limited use of terms of effect or result, which accurately define the essential qualities of a product to one skilled in the art, may in some instances be permissible and even desirable * * *."

Appellant in the instant case has made just such a use of terms of result to define an essential quality of his inorganic salts.

Having carefully reconsidered the Wabash case and others, we are unable to agree with the Patent Office Solicitor that the third paragraph of 35 U.S.C. § 112 is necessarily "in derogation of the previous case law" and therefore "must be strictly construed." [11]

Furthermore, we are also unable to agree with the solicitor when he states that "the last paragraph of 35 U.S.C. § 112 is by its very language limited to claimed combinations involving mechanical structures or apparatus and methods." The word "combination" in this paragraph includes "not only a combination of mechanical elements, but also a combination of substances in a composition claim, or steps in a process claim." P. J. Federico, Commentary on the New Patent Act, 35 U.S.C.A. Vol. 1, p. 25 (1954). We agree with that statement in the commentary, which is fully supported by the legislative history.

We find particularly appropriate at this point the following words of an eight-man Patent Office Board of Appeals in Ex parte Ball and Hair, 99 USPQ 146, 148:

"* * * the language of [the third paragraph of] Section 112 is thought to be so clear as not to require any resort to extrinsic evidence in connection with its interpretation."

The board also noted (at p. 148) that:

"* * * some measure of greater liberality in the use of functional expressions in the definition of ele-

[11] We do not mean to imply that 35 U.S.C. § 112 was not in derogation of the result reached in *any* case decided prior to the enactment of the 1952 Patent Act. See, e. g., Halliburton Oil Well Cementing Co. v. Walker et al., 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3. We feel, however, that a considerable body of case law, if not the preponderance thereof, before the Halliburton case interpreted broad statements of structure, e. g., "means," plus a statement of function in the manner now sanctioned by the statute. See, e. g., Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 558, 18 S.Ct. 707, 42 L.Ed. 1136. See also in this regard the February 1952 issue of the American Patent Law Association Bulletin wherein is reprinted at pp. 40–50 an address by the Hon. Joseph R. Bryson, Representative from South Carolina, given on January 24, 1952, to the Philadelphia Patent Law Association. Representative Bryson was at this time Chairman of Subcommittee No. 3 of the Judiciary Committee of the House of Rep-

resentatives, which subcommittee was in charge of the legislation which resulted in the Patent Act of 1952. He stated in part (at pp. 45–46):

"I should like to say a word on the provision in the bill for functional claiming. [H.R. 3760, 82d Cong., 1st Sess., § 112 (1951)] * * *. This provision in reality will give statutory sanction to combination claiming as it was understood before the Halliburton decision. *All the elements of a combination now will be able to be claimed in terms of what they do as well as in terms of what they are.*" [Emphasis ours.]

For a more complete analysis of the cases under the third paragraph of 35 U.S.C. § 112 since *its* enactment, see Woodcock, "Patent Act of 1952—Ten Years of Interpretation: Section 112," p. 157, American Bar Association Section of Patent, Trademark and Copyright Law, Summary of Proceedings at San Francisco, California (1962).

ments in proper combination claims is authorized by Section 112, than has been permitted by some of the stricter decisions of the courts in the past."

Inasmuch as it is our opinion (1) that there is no statutory ban on the use of the "functional" language employed in the instant claims by appellant; (2) that cases cited in support of the Patent Office's condemnation of the statements of function used in the instant claims are inapplicable to the situation here; (3) that the use of such functional statements as here appear is specifically sanctioned by the third paragraph of 35 U. S.C. § 112; and (4) that no objection has been made to the sufficiency of appellant's invention description to support in nonfunctional terms the functional statements made in the claims, we reverse the rejection of the instant claims as functional.

### (b) *Undue Breadth*

The rejection of the claims for "undue breadth" places particular emphasis on (1) an alleged "undue burden upon the public *to determine* what salts are *suitable* for obtaining the desired results" (emphasis ours), and (2) an alleged "undue [amount of] experimentation" required of those skilled in the art to determine those salts possessing the "function asserted" by the instant claims. The undue breadth rejection phase of the instant case appears in the following posture. Appellant has *described* his invention as *comprehending* the use therein of *any* inorganic salt *capable* of performing a *specific* function in a specific combination and he has disclosed specifically four such salts which are capable of performing this function. The examiner and the board, believing that not all inorganic salts are capable of performing this function and that one skilled in the art would not know offhand which inorganic salts are capable of so functioning, have rejected the claims as "unduly broad."

It is clear that the instant claims do not comprehend a class of inorganic salts of any greater breadth than is *comprehended* by the invention description.[12] It is equally clear from this description and appellant's brief that, in the words of the *second* paragraph of section 112, "applicant regards as his invention" the combination with his other tread ingredients of *any* inorganic salt *capable* of "maintaining the carbohydrate, the protein, or mixture thereof, in colloidal suspension * * *." It is exactly this combination which appellant has particularly pointed out and distinctly *claimed* in compliance with the *second* paragraph of section 112. If, therefore, as the examiner alleges, many an "inorganic salt * * * would not be operative for appellant's purpose," this criticism bears only on the sufficiency of the invention description. But its adequacy under the *first* paragraph of section 112 has not been questioned.

We find the arguments of the board and the examiner relating to experimentation necessary to determine the suitability of *undisclosed* salts to operate in appellant's claimed combination beside the point. Appellant's invention is the *combination* claimed and not the discovery that certain inorganic salts have colloid suspending properties. We see nothing in patent law which requires appellant to discover which of all those salts have such properties and which will function properly in his combination. The invention description clearly indicates that any inorganic salt which has such properties is usable in his combination. If others in the future discover what inorganic salts additional to those enumerated do have such properties, it is clear appellant will have no control over them per se, and equally clear his claims should not be so restricted that they can be avoided merely by using some inorganic salt not named by appellant in his disclosure. The only "undue burden" which is apparent to us in the instant case is that which the Patent Office has attempted to place on

12. See note 1, supra.

the appellant. The Patent Office would require him to do research on the "literally thousands" of inorganic salts and determine which of these are suitable for incorporation into his claimed combination, apparently forgetting that he has not invented, and is not claiming, colloid suspending agents but tire tread stock composed of a combination of rubber and other ingredients.

We are not persuaded that our conclusion on this point is wrong by decisions of this and other courts relating to the sufficiency of invention disclosures in cases wherein the applicant is claiming chemical *compounds* per se.

The Patent Office rejections of claims 38–49 are reversed.

Reversed.

MARTIN, J., concurs in result only.

WORLEY, Chief Judge, with whom ALMOND, J., joins (dissenting)

I am unable to agree that the board erred in rejecting the claims on the grounds of functionality and undue breadth.

Appellant defines one of the materials in his composition as *an inorganic salt* that is *capable of holding a mixture* of said carbohydrate and protein *in colloidal suspension* in water, (Italics supplied.) The examiner held that language failed to properly define the invention.

In affirming, the board stated:

"* * * * There is no indication that the function asserted for the salts is known in the art so that the suitable salts could be readily determined without undue experimentation nor is there any criteria given in the disclosure by which it could be fairly readily determined what salts are suitable. It seems that the determination of suitable salts thus would require testing by trial and error many thousands of known salts to ascertain those which would function in the manner required by the claims, and such a burden should not be required of the public or even by those skilled in the art. Ac-

cordingly, we will sustain this rejection." (Italics supplied.)

I find no evidence in the record before us which would in anywise refute that reasoning and conclusion.

The basis for rejection here is clearly 35 U.S.C. § 112 which requires an applicant to particularly point out and distinctly claim his alleged invention. The issue of failure to comply with that section because of functionality introduces an element of degree, which, much like the question of obviousness, is dependent on the particular facts in each case.

It seems to me that one skilled in this art would be unable to determine, without elaborate experimentation, which salts, other than the four disclosed, are capable of performing the desired function. That is so because appellant has failed to disclose any factual criteria or scientific principles upon which equivalence can be based.

Only four examples are given in the specification and they belong to a narrow group, viz, alkaline earth or alkali salts of carbonic or phosphoric acid. The disclosure does not teach whether *any* inorganic salts, other than the four disclosed, would perform the same function. The common properties of the salts relied on to perform said function are *not* disclosed, nor are the examples sufficiently numerous to make clear what those properties might be. Since equivalent salts cannot be determined from the teaching of the disclosure or the skill of the art, surely appellant is not entitled to claim them. Discovery of suitable salts would seem to require not merely determining whether they would keep the protein and carbohydrate in colloidal suspension in a laboratory test tube, but whether they would actually maintain the suspension under conditions of use, i. e., in icy water, under the pressure of a rotating automobile tire, and for a sufficient length of time.

The claims employ functional terminology which clearly results in their being vague, indefinite and too broad. As such their allowance is precluded by 35 U.S.C. § 112. I would affirm.