56 CCPA

**Application of George E. MYERS.**
**Patent Appeal No. 8035.**

United States Court of Customs and Patent Appeals.
May 22, 1969.

John M. Webb, Pittsburgh, Pa., attorney of record, for appellant. Spencer B. Michael, Washington, D. C., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. S. Wm. Cochran, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and BALDWIN, Judges.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals[1] affirming the examiner's rejection of claims 16–20, the only remaining claims in appellant's application.[2] The board affirmed the rejection of certain of those claims on several grounds: (1) claims 16–20, as based on an insufficient disclosure, under 35 U.S.C. § 112; (2) claims 16–20, as unduly broad and indefinite, under 35 U.S.C. § 112; (3) claims 16–20, as obvious in view of Van der Pyl,[3] Nestor,[4] Kistler et al.,[5] and Voegeli-Jaggi,[6] under 35 U.S.C. § 103; and claims 17, 19 and 20, as drawn to new matter. No claims have been allowed.

## THE INVENTION

The invention relates to an improved rotary or wheel-type *slitter knife* for *cutting* metal strip and sheet and is illustrated below as having a hard metal carbide blade or cutting rim 10, 10a, preferably of tungsten carbide, separated from and mounted on a hardened steel bushing 11, 11a by means of a supporting member 12, 12a formed in situ by curing or hardening a mixture of powdered or finely divided metal, such as steel or

1. Consisting of Messrs. Rosa and Behrens, Examiners-in-Chief, and Bendett, Acting Examiner-in-Chief, opinion by Mr. Behrens.

2. Serial No. 847,836, filed October 21, 1959, for "Slitter Knives." The application, orginally entitled "Slitter Knives and Their Manufacture," was amended pursuant to a restriction requirement, to cancel the method-of-making claims and to eliminate reference to that method in the description of the claimed invention, as appellant elected to prosecute claims to the slitter knife.

3. U.S. Patent 2,150,886, issued March 14, 1939.

4. U.S. Patent 2,862,806, issued December 2, 1958.

5. U.S. Patent 2,189,734, issued February 6, 1940.

6. U.S. Patent 2,070,734, issued February 16, 1937.

aluminum, and epoxy or epoxy-polyamide resin having an epoxide equivalent (grams of resin containing one gram equivalent of epoxide) of 400 or less.

Fig. 1

Fig. 2

In describing the preferred embodiment, the specification states:

The supporting member must form a strong bond with both the tungsten carbide cutting rim and the steel bushing, it must possess substantial strength, particularly under compression, and it should not shrink during curing. These properties are obtained by using a mixture of powdered or finely-divided metal, such as steel or aluminum, and an epoxy or epoxy-polyamide resin. These resins have excellent dimensional stability during the curing process and provide a strong bond with the rim and the bushing. When coupled with powdered metal, they yield a supporting member with excellent compressive strength. I have found that a mixture of 80% powdered steel and 20% resin works very satisfactorily. However these proportions may be varied depending on the strength desired.

## THE CLAIMS

The appealed claims read:

16. A rotary slitter knife for slitting metal strip and sheet comprising a bonded hard metal carbide rim as the cutting element of said knife, said rim being mounted on a metal bushing by a supporting member disposed between at least a part of said bushing and said rim, said supporting member consisting essentially of a hardened material of a powdered metal and an epoxy resin, said resin being characterized by high dimensional stability during curing and good bonding properties, said supporting member effecting a bond with said rim and said bushing.

17. The knife of Claim 16 wherein said resin has an epoxide equivalent no greater than 400.

18. The knife of Claim 16 wherein said supporting member is substantially about 80% powdered metal and substantially about 20% resin, said powdered metal being selected from a group consisting of steel and aluminum.

19. The knife of Claim 16 wherein said bonded hard metal carbide consists essentially of tungsten carbide and said resin has an epoxide equivalent no greater than 400.

20. The knife of Claim 19 wherein the binder for said bonded hard metal carbide is a metal selected from the group consisting of cobalt and nickel.

## THE REFERENCES

The reference patents, all relating to "abrasive" or "grinding" articles and *not* metal "slitting" or "cutting" tools, are summarized below.

Van der Pyl discloses a *grinding* wheel having an outer *grinding* rim formed of diamond grains bonded with a synthetic resin, and an inner supporting member formed of metal powder, preferably aluminum, bonded with natural or synthetic resins. Suitable natural or synthetic resins include phenol-formaldehyde resin, any alkyd resin, thermoplastic resins, and shellac or the like.

Nestor discloses an *abrasive* wheel made by whirling a rotating mold containing a suspension of *abrasive grit,* preferably aluminum oxide grains, and a resin binder, preferably epoxide resin having an "epoxy number approximately 192 grams per epoxide equivalent." Centrifugal force causes the *abrasive grains* to be arranged uniformly at the periphery leaving a "clear inner resin ring."

Kistler et al. relates to a molded *abrasive* article or *grinding* wheel. The abrasive portion is disclosed as composed of *abrasive grains,* such as, "any of the hard carbides, for example boron carbide or tungsten carbide" bonded with a novel synthetic resin formed by copolymerizing a suitable ester of acrylic acid or an alpha substituted acrylic acid with a compatible polymerizable hardening agent. The resin is softer than phenol-formaldehyde and more heat resistant than shellac or rubber.

Voegeli-Jaggi discloses a *grinding* wheel comprising an outer *grinding* portion formed of an *abrasive* grit embedded in a phenolic resin, mounted on an iron support by means of a supporting portion which "is formed of artificial resin such as phenolic condensation product resin and is in the form of a hollow cylinder or disc."

## THE REJECTIONS

### *Insufficient Disclosure*

In support of his rejection of claims 16–20 as being based on an insufficient disclosure, the examiner stated in his Answer:

\* \* \* Since appellant's disclosure as originally filed fails to identify the bond material for the tungsten carbide rim "10", the specification \* \* \* fails to set forth a complete written description of the best mode contemplated by the inventor of carrying out his invention.

In sustaining, the board noted appellant's "failure to describe the tungsten carbide rim material" and the absence of "a statement in the original specification to the effect that a *bonded* carbide rim was employed." [Emphasis supplied.]

### *Unduly Broad and Indefinite*

In rejecting the claims "as not particularly pointing out and distinctly claiming the invention as required by 35 USC 112," the examiner said:

Claim 16 is considered unduly broad and indefinite in the recited limitations of (1) "a bonded hard metal carbide rim" and (2) "a powdered metal". In the first recited limitation, the identity of the bond \* \* \* is indefinite and would include resins and ceramics as the binder \* \* \*. In fact, the limitation reads on a self-bonded metal carbide rim. The affidavits \* \* \* disclose the use of an iron-group metal as essential for bonding the hard carbide particles. [The board noted that (1) applied only to claims 16–19.] The second recited limitation above, includes the powdered metals of cobalt, nickel, iron and silver in supporting member "12" which are not taught by appellant as being operative. \* \* \* [A]luminum and steel are the only two specific metal powders identified as operative \* \* \*. [The board noted that (2) applied only to claims 16, 17, 19 and 20 and "that the term 'powdered metal' is broad enough to refer to

powdered sodium, or lithium, for instance, apparently unsuitable."]

### Obviousness

The examiner rejected claims 16–20 as unpatentable over Van der Pyl in view of Nestor, Kistler et al. and Voegeli-Jaggi. The examiner's application of the references to the claims is summarized:

Van der Pyl discloses an inner nongrinding ring consisting of aluminum powder and a synthetic resin bonded to an outer *abrading* rim of diamond grains in a synthetic resin bond. Kistler et al. discloses employing tungsten carbide or diamonds as the *abrasive* grains in molding resin-bonded *grinding* wheels. Nestor discloses an *abrasive grinding* wheel consisting of an epoxy ring and an outer *grinding* rim consisting of *abrasive* grains and an epoxy resin. Substituting tungsten carbide particles for the diamond grains in the outer rim of Van der Pyl and employing an epoxy resin as the synthetic resin in the inner ring thereof would be obvious expedients in view of Kistler et al. and Nestor. Employing a metal bushing in Van der Pyl's *abrasive* wheel would also be obvious in view of Voegeli-Jaggi. [Emphasis added.]

In sustaining, the board opined that:

\* \* \* the references demonstrate that the expedient of joining a hard bonded rim to a sleeve or shaft by means of a thermosetting resin in a powdered metal composition would have been obvious. The difference in operation between a rotary slitter knife and an abrasive wheel is not a controlling consideration in this case. The record does not suggest that the problem of bonding the hardened rim to a supporting sleeve or shaft is different in these two types of wheels.

### New Matter

The board sustained the rejection of certain claims as being drawn to new matter

\* \* \* in the limitation "no greater than 400" characterizing the epoxide equivalent in claims 17 and 19, and in the expression "a metal selected from the group consisting of cobalt and nickel" in claim 20.

In so holding, the board was of the opinion that:

\* \* \* the epoxide equivalent of "no greater than 400" is new to the application as a description of the final product. The specification, page 4, refers to an epoxy resin equivalent "of 400 or less" but this reference is directed to the liquid resin prior to curing, and is intended to insure liquidity at room temperature, a process and not a product feature.

We find no basis in the original application for the reference to cobalt and nickel. Assuming that iron group metals have been employed as bonding materials in this art, this would not give appellant the option of selecting cobalt and nickel for monopoly after the filing date of the application.

### OPINION

We believe the board's affirmance of the rejection of claims 16–20 to be in error, excepting the rejection of claim 20 as being drawn to new matter.

### Insufficient Disclosure

The original application contained no express statement that the carbide rim is "bonded" nor did it disclose the nature of the binding material. However, an omission is not fatal where, as here, the disclosure is sufficient to enable *those skilled in the art* to practice the invention. A specification is directed to those skilled in the art and need not teach or point out in detail that which is well-known in the art. In re Nelson, 280 F.2d 172, 47 CCPA 1031, (1960). "Appellant's invention is a new combination of old materials," namely, "a new slitter knife using a well-known carbide cutting blade." The specification discloses that "slitter knives having tungsten carbide blades are currently used."

Affidavits of appellant and Ritz, a metallurgist for more than 35 years

who is familiar with metal slitting blades, *prima facie* show that the terms used in the specification, namely, "tungsten carbide blades" and "tungsten carbide rims," have only one meaning to those skilled in the *cutting* art—a well-known tungsten carbide bonded by an iron group metal. The affidavit of Ritz states:

> that the hard tungsten carbide facing materials referred to in the aforementioned patent application can only consist of hard carbide particles and an iron group metal binder, *usually* cobalt or nickel;
>
> *   *   *   *   *   *
>
> that *   *   * a person of ordinary skill in the art of metal slitting *   *   * would immediately recognize that the "tungsten carbide rim" referred to in the specification is the hard tungsten carbide facing material commonly employed which consists essentially of hard carbide particles bonded by iron group metals *   *   *. [Emphasis added.]

The record before us *prima facie* establishes that the terms used in the specification clearly teach those skilled in the metal *slitting* wheel or *cutting* wheel art how to practice appellant's invention; thus, the specification satisfies the requirements of 35 U.S.C. § 112.

The solicitor argues that Kistler et al. evidences "the fact that it was known to those in the art that other materials could be *successfully* used as binders for tungsten carbide particles for use in *cutting* tools." [Emphasis added.] However, the solicitor has fallen into the same error as the board and the examiner; that is, Kistler et al. relates to resin bonded *abrasive* articles or *grinding* wheels, *not metal slitting knives to* which the instant invention is directed. Although synthetic resin binders for carbide grains may be satisfactory for *abrasive* tools, nothing of record establishes the operability of such binders for rotary slitter knife rim elements. In fact, the record supports the opposite conclusion.

## Unduly Broad and Indefinite

We do not consider that the limitation, "a bonded hard metal carbide rim," is unduly broad, and the rejection of claims 16–19 on that ground is untenable. Such a limitation, as evidenced by the record, defines an article which is old and well-known to one skilled in the metal slitting wheel art. Moreover, the claims of a patent are to be construed in the light of the specification and the understanding thereof by those skilled in that art to whom they are addressed. The record further establishes that one skilled in the art here involved would not consider the term "bonded hard metal carbide" broad enough to include resins and ceramics as binders, as well as self-bonded carbide, all apparently unsatisfactory; instead, such a limitation would mean, to one skilled in the art, a carbide bonded with an iron group metal.

The solicitor argues that claims 16–19 omit an essential limitation, namely, an iron group binder, and are therefore, unpatentable for overclaiming the invention. He cites Graver Tank & Mfg. Co., Inc. et al. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672 (1949) in support of the proposition that, when the claims improperly overclaim the invention and are free from ambiguity which might justify resort to the specification, they are not to be saved because the latter is less inclusive. However, in the *Graver Tank* case, involving welding flux, the Supreme Court merely affirmed the District Court's refusal to limit or qualify the claim terms "silicates" and "metallic silicates," so as to mean only the nine specific metallic silicates which had been proved operative and had been disclosed in the specification. In that case, there was no indication that the terms used in the claims would have a more specific meaning to one skilled in the art than the broader *generic* literal meaning; one skilled in *that* art apparently would not have recognized that "silicates" or "metallic silicates" means only the nine metallic silicates disclosed in the specification. Here, however, evidence was introduced

which *prima facie* establishes that "bonded hard metal carbide rim" has but one meaning to those skilled in this art, namely, a hard metal carbide bonded by an iron group metal.

■ The rejection of claims 16–20 as unduly broad in calling for a supporting member which includes broadly "a powdered metal" is, we feel, likewise untenable. The examiner noted that such limitation "includes the powdered metals of cobalt, nickel, iron and silver * * * which are not taught by appellant as being operative." The board additionally asserted that such highly reactive materials as powdered sodium and lithium would also be included, and the solicitor adds to the list potassium and magnesium which, he suggests, may react with the epoxy resin. Again, the solicitor argues that the claims are unpatentable for overclaiming, citing *Graver Tank*, supra, and also In re Newton, 187 F.2d 337, 38 CCPA 877 (1951). However, in claiming a mechanical combination, which the invention here is, an applicant is not necessarily limited to the specific composition which he discloses as the material for making up each and every element of the combination. In re Fuetterer, 319 F.2d 259, 50 CCPA 1453 (1963). If every element in a mechanical combination claim were required to be so specific as to exclude materials known to be inoperative and which even those *not* skilled in the art would not try, the claims would fail to comply with 35 U.S.C. § 112 because they would be so detailed as to obscure, rather than particularly point out and distinctly claim, the invention.

Here, appellant has *described* his invention as *comprehending* the use therein of *any* metal in the supporting member *capable* of performing a specific function in a specific combination, and he has disclosed specifically two such metals having such capability. The examiner and the board, believing that not all metals are capable of performing this function and that one skilled in the art would not know offhand which metals are capable of so functioning, have rejected the claims as unduly broad. But it is clear that the instant claims do not comprehend a class of metals of any greater breadth than is *comprehended* by the invention description which is quoted above under "the invention." It is equally clear from this description and appellant's brief that, in the words of the second paragraph of section 112, "applicant regards as his invention" the slitter knife *combination* with epoxy resin and *any* metal powder *capable* of providing a supporting member having high compressive strength and resistance to shrinkage. Thus, the limitation of "a powdered metal" is not unduly broad for the reasons expressed in *Fuetterer*, supra, and in Judge O'Connell's opinion in *Newton*, supra, where further precedents are cited.

### Obviousness

■ The rejection of claims 16–20 as unpatentable over Van der Pyl in view of Nestor, Kistler et al. and Voegeli-Jaggi under 35 U.S.C. § 103 cannot be sustained on the record before us.

The examiner and the board have apparently failed to take into account the precise art to which the invention relates. The invention relates to the sheet metal slitting art wherein a hard metal carbide rim is employed to exert a shearing action. None of the references teaches a hard metal carbide cutting rim and thus none of the references can teach or suggest the expedient of joining a hard metal carbide rim, as that term is used in the prior art and is understood by those skilled in the art, to a sleeve or shaft by means of an epoxy resin and powdered metal supporting member. Combining the references as done by the examiner and sustained by the board[7] will result in an *abrasive* or *grinding* wheel but will not result in appellant's invention, namely, "a rotary slitter knife for slitting metal strip and sheet." In this respect, this case is not unlike Kropa v. Robie et al., 187 F.2d 150, 38 CCPA

---

7. The board affirmed the *examiner's* rejection summarized in the text of this opinion, supra, and made no Rule 196(b) rejection.

858, (1951), where the claim preamble, "an abrasive article," was held to be a significant limitation which defined a particular article and property of that article and gave "life and meaning to the claim."

### New Matter

The rejection of claims 17 and 19 on the basis of new matter in the limitation "no greater than 400" characterizing the epoxide equivalent is reversed because *original* claim 5[8] clearly supports the terminology in the rejected claims. It is elementary that claims contained in an application as originally filed may be considered part of the disclosure of the application. McBride v. Teeple, 109 F.2d 789, 27 CCPA 961 (1940).

The rejection of claim 20 on the basis of new matter in the expression "a metal selected from the group consisting of cobalt and nickel" is proper on this record. Although the affidavits of record *prima facie* established that "tungsten carbide or other hard metal carbides" means, to one skilled in the art, tungsten carbide or other hard metal carbides bonded by *an iron group* binder, the affidavits do not sufficiently show that such binder is necessarily cobalt or nickel. Appellant's affidavit refers to rim particles as "bonded together with a binder *such as* cobalt or nickel" (emphasis added) and to "cobalt or nickel bonded metal carbides." Certainly the first quoted passage suggests that other binders might be encompassed within the meaning of "tungsten carbide." The affidavit of Ritz mentions "hard carbide particles and an iron group metal binder, *usually* cobalt or nickel," "bonded by an iron group metal *such as* cobalt or nick-

el," and "hard carbide particles bonded by iron group *metals* [with no examples]." (Emphases added.) It may be inferred from the record that "tungsten carbide" would not necessarily mean *cobalt or nickel* bonded tungsten carbide since other iron group metals may also be suitable. Accordingly, appellant may not specifically claim those two binders after his filing date for want of a specific disclosure even though they may be the most prevalently used.

### CONCLUSION

The decision of the board is affirmed as to the rejection of claim 20; the board's affirmance of the rejection of claims 16–19 is reversed.

Modified.

SMITH, J., participated in the hearing of this case but died before a decision was reached.

NEESE, Judge (concurring).

The subject matter of the appellant's invention is in a classfication recognized by the Patent Office as cutting wheels,[1] made by a process wherein a hard metal carbide rim, employed to exert a shearing action, is bonded to a hub. The prior art cited by the examiner and relied on by the Board of Appeals relates to abrading wheels.[2]

I am in accord with Judge Baldwin's opinion that none of these prior art references teaches the expedient of joining a hard metal carbide cutting rim, as that term is used in the prior art and understood by those skilled in the art, to a sleeve or shaft by means of an epoxy resin and powdered metal supporting mem-

---

8. Original claim 5 which formed a portion of the original disclosure reads:
   5. A rotary slitter knife comprising a tungsten carbide rim, a hardened steel bushing, and a supporting member between said rim and said bushing and bonding said rim to said bushing, said supporting member consisting essentially of powdered metal and an epoxy resin having an epoxide equivalent of 400 or less.

1. In Class 83 of the Patent Office Classification Manual entitled "cutting" which includes machines and tools for cutting.

2. In Class 51 of the Patent Office Classification Manual entitled "abrading" which includes machines and tools for abrading.

ber; and that a combining of these references will not result in a rotary slitting-knife for slitting metal-strip and -sheet.

The differences between the prior art and the subject matter sought to be patented by the appellant are apparent in the record, i. e., a slitting-wheel which cuts shee-metal by a shearing action differs in kind from an abrading wheel which removes material by abrasive action; and, in operational use, tungsten carbide is applied in a slitting-wheel, not to remove metal as in abrasion, but to resist wear while providing the force to be imposed in the shearing of sheet-metal.

There is no evidence before us suggesting that a person of ordinary skill in the slitter-wheel art would glean information from the abrading-wheel art in solving this problem in the slitter-wheel art. Thus, under the record before us, the differences between (a) the subject matter sought by the appellant to be patented and (b) the prior art, are not such that such subject matter as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the art to which said subject matter pertained. 35 U.S.C. § 103; see Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545, 556 [11] (1966).

For the foregoing reasons, I concur in the reversal of the § 103 rejection, and in all other respects I join the opinion of Judge Baldwin.

WORLEY, Chief Judge, dissenting, with whom ALMOND, Judge, joins.

It seems to me that the majority, in reversing the board's rejection under § 103, has attributed to the board a line of reasoning that it did not really pursue. The majority states:

\* \* \* None of the references teaches a hard metal carbide cutting rim and thus none of the references can teach or suggest the expedient of joining a hard metal carbide rim, as that term is used in the prior art and is understood

by those skilled in the art, to a sleeve or shaft by means of an epoxy resin and powdered metal supporting member. Combining the references as done by the examiner and sustained by the board will result in an *abrasive* or *grinding* wheel but will not result in appellant's invention, namely, "a rotary slitter knife for slitting metal strip and sheet. \* \* \*

I do not think the board intended to imply that it was limiting its consideration solely to what was taught merely to the *abrading* art by a consideration of the various teachings of the references, or that it was relying on that combination alone to render obvious appellant's slitter knife.

It is well settled that we must consider the state of the prior art not only as shown in the references employed, but also as reflected in appellant's specification. In re Davis, 305 F.2d 501, 49 CCPA 1196 (1962). Here, appellant's specification states:

\* \* \* Two principal types of slitter knives having tungsten carbide blades are currently used. Slitter knives of small width (⅜″ and less) have been made of solid tungsten carbide. Such knives obviously have in them a substantial amount of expensive tungsten carbide which does not serve to perform any of the cutting operation and has to be scrapped or reclaimed after the knife has worn to a certain extent A tungsten carbide rim is mechanically mounted on a steel hub for knives ½″ and wider. In these structures, a screw clamp holds the tungsten carbide rim in position. Although there is less unusable carbide in such structures, the expense of manufacturing and assembling this type is high.

Thus it can be seen that the board, like this court, was faced with a record which establshes beyond peradventure that each element of appellant's claimed combination is old. What is new, insofar as this record shows, is the use of a particular means—a previously known chemical composition consisting essentially of a mixture of epoxy resin and finely divided

metal [1]—to attach the concededly old "bonded hard metal carbide rim" or cutting blade to the equally old "metal bushing" or hub, thereby replacing the clamp holding means previously employed for that purpose in the prior art.

It was in those circumstances that the board stated:

\* \* \* the references demonstrate that the expedient of joining a hard bonded rim to a sleeve or shaft by means of a thermosetting resin in a powdered metal composition would have been obvious. *The difference in operation between a rotary slitter knife and an abrasive wheel is not a controlling consideration in this case.* The record does *not* suggest that *the problem* of bonding the hardened rim to a supporting sleeve or shaft is *different in these two types of wheels.* [Emphasis supplied.]

The board's language "hard bonded rim" or "hardened rim" is sufficiently broad to encompass either appellant's "bonded hard metal carbide rim" or the abrading rims of the references. It is evident from those references that phenol formaldehyde or epoxy resin materials, with or without metal powder fillers for purposes of heat dissipation, have long been suggested to those in the art as supporting members for abrasive rims. I think the board properly found appellant's particular means for attaching the cutting blade to the hub to be obvious in view of what had been suggested before in the abrading wheel art as shown by the references before us.[2]

I would affirm the §·103 rejection.

---

1. That the epoxy resin-metal powder composition appellant employs was itself known prior to appellant's filing date is clear from certain pages from Lee and Neville "Epoxy Resins" (1957) filed by appellant during proceedings below. Lee points out that epoxy resins "possess a number of unusually valuable properties immediately amenable to use in the formulation of *adhesives*, sealing liquids, *cold solders, castings*, laminates, and coatings." [Emphasis supplied.] "Cold solder," in turn, is defined by yet another publication appellant submitted as "composed of finely divided metallic particles dispersed in epoxy resin." Among the desirable properties of epoxy resins, Lee mentions "high adhesive strengths," ability "to provide chemical bonds with surfaces, such as metals," and "low shrinkage." Appellant's argument that it "is surprising and unexpected in the art that such a supporting member [of epoxy and powdered metal] would possess the strength, resistance to shrinkage, and adhesive properties requisite for the present application" appears contradicted by Lee.

2. I agree with the solicitor that:
   \* \* \* The [slitter and abrading] arts would seem, insofar as the supporting structure is concerned, clearly to be analogous. Those in the slitter art would naturally look to abrading wheels for suggestions for improved supporting structures \* \* \*.