**Application of Robert J. ANDERSON.**

**Patent Appeal No. 8837.**

United States Court of Customs and Patent Appeals.

Jan. 26, 1973.

S. Augustus Demma, New York City, attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Raymond E. Martin, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

RICH, Judge.

This appeal is from the Patent Office Board of Appeals decision affirming the rejection of claims 1–10, all claims of application serial No. 642,294, filed May 31, 1967, entitled "Wound Dressing." The application is stated to be a continuation-in-part of serial No. 337,709, filed January 8, 1964, which matured into patent No. 3,328,259, and of serial No. 782,515, filed December 23, 1958, now abandoned. We reverse in part and affirm in part.

### The Invention

The invention described and claimed by appellant is a surgical dressing which is soluble in plasma and completely absorbable in the body and hence suitable for both external and internal use. It is intended to afford a substantial degree of containment against excess flow of plasma from a wound to which it is applied. Being absorbable, it becomes incorporated in the scab or eschar which forms over an external open lesion. The abstract forming part of the specification reads:

> The invention comprises a laminated dressing for a wound comprising a primary layer which is readily soluble in plasma and a secondary layer in face adhering contact with the primary layer, also soluble in plasma but to a lesser extent than the primary layer.

Claim 1, which is the only independent claim and is an unamended original claim in this application and therefore, by elementary principles of patent law, to be considered as a part of the original

disclosure,[1] reads (paragraphing supplied):

1. A laminated dressing for a wound comprising a laminated structure made up of two layers arranged face to face,

both layers being plasma-soluble,
one layer constituting a primary layer adapted to be applied directly to the wound, and being more readily soluble in plasma than the other layer,

the other layer constituting a secondary layer serving as a backing for said primary layer.

It is thus seen that the invention of claim 1 is an article of manufacture comprising a combination of elements. Since claims 2–10 all depend, directly or indirectly, from claim 1, they are likewise combination claims. We shall not discuss them here but in connection with our discussion of the various rejections pertaining to them. The primary issue is the patentability of claim 1, the parent and broadest claim. We find it was erroneously rejected.

### The Rejections

The board did not altogether agree with the grounds of rejections as stated by the examiner, affirmed some, reversed some, and added some of its own, not designated as new rejections. Appellant has made no issue of the fact that some of the rejections originated with the board. The Patent Office Solicitor has presented an analysis showing that we have seven different rejections before us, five of them on the ground that claims are "broader than warranted by the disclosure" for one reason or another. A sixth is for indefiniteness and the seventh for new matter.

We agree with the solicitor's explanation of what the statutory bases of these rejections *should* have been stated to be, which he has made in the light of two cases we decided after the date of the examiner's Answer herein and so close to the board's decision that it certainly did not consider them, In re Borkowski, 422 F.2d 904, 57 CCPA 946 (1970), and In re Wakefield, 422 F.2d 897, 57 CCPA 959 (1970). See also In re Hammack, 427 F.2d 1378, 57 CCPA 1225 (1970). The solicitor's explanation, which differs in several respects from the reasons given by the examiner and affirmed by the board, reads:

It is apparent from the preceding analysis of the various grounds of rejection that all claims (grounds 1–5) have been rejected for failure to satisfy Section 112, paragraph 1, that claims 7, 9, and 10 have additionally been rejected for failure to satisfy Section 112, paragraph 2 (ground 6), and that claim 2 has additionally been rejected for failure to satisfy Section 132 (ground 7).

Further details as to these rejections will be given as we consider them. There is no rejection on prior art nor any prior art relied on.

### OPINION

### I

All claims except 4, 9, and 10[2] were rejected as "broader than warranted by the disclosure" in the use of the expression (in the third clause in claim 1 as set forth above) "a primary layer adapted to be applied directly to the wound, and being more readily soluble in plasma than the other layer."

In making this rejection, the examiner did not explain the basis of his assertion that the claims be so rejected are

---

1. Manual of Patent Examining Procedure 706.03(n) and 608.01(1), In re Oswald, 83 F.2d 827, 23 CCPA 1176 (1936), In re Myers, 410 F.2d 420, 427, 56 CCPA 1129, 1138 (1969).

2. The examiner applied this rejection only to claims 1, 5, and 6. The board extended it to other claims by the statement: "This term, as appellant appears to recognize, appears in claims 1, 2, 3, 5, 6, 7 and 8." The fact is the "term" is a part of all claims.

"broader than warranted by the disclosure." Challenged with having given no explanation, the only light he shed in his Answer was to say that "the above phrase was rejected on breadth," citing in justification In re Sus, 306 F.2d 494, 49 CCPA 1301 (1962), and In re Lund, 376 F.2d 982, 54 CCPA 1361 (1967). Of course, it was not the "phrase" the examiner was rejecting but the claim and we will assume that is what he meant. We find no support for the rejection in *Sus*. That case essentially involved the patentability of claims to a group of chemical compounds and to their uses claimed as processes of making printing plates. We found the claims to be not in compliance with § 112 because, as clearly stated at the end of the opinion, they did not conform to what the applicant *described* as his invention in the specification. The situation here is that the broad claims are of the same scope as the invention described. We also note that appellant relied on *Sus* below for our statement, to which we adhere, that:

> The public purpose on which the patent law rests requires the granting of claims commensurate in scope with the invention disclosed. This requires as much the granting of broad claims on broad inventions as it does the granting of more specific claims on more specific inventions.

*Lund* was another case where the claims were for chemical compounds, useful as medicaments. It relied on *Sus*. We there said, "the *invention claimed* should be no broader than the *invention set forth* in the written description [contained in the] specification." We found that not to be the case. Here we find it is the case which is sufficient to distinguish *Lund*.

In affirming, the board presented an entirely different justification, as follows (emphasis ours):

> The *major part* of appellant's specification is directed to a laminate in which the primary layer is *hemostatic.* Such a layer is exemplified by the disclosures of two specific ethers of cellulose. The prophetic paragraph in page 5 of the specification, however, has no support by way of *exemplification* and does not demonstrate or suggest to one skilled in this art *how to use* any other material in the laminate. There is no suggestion as to any other specific materials which may be employed. Thus the Examiner's rejection * * * is sustainable.

■ It is quite true that the major part of appellant's specification is a disclosure of a primary layer having hemostatic properties but in determining what is disclosed we cannot restrict our consideration to the major part of the disclosure. Appellant is clearly entitled to have the whole of his disclosure considered. We have already adverted to the abstract and to original claim 1, both of which make clear that appellant did not regard his invention as limited to a hemostatic primary layer. His broad disclosures do not refer to the hemostatic property at all. Additionally, the "prophetic" paragraph referred to by the board appears to be the one which reads:

> Although the primary layer is described as being hemostatic, as far as certain aspects of the invention are concerned, it need not be so, as long as it is water-soluble or plasma-soluble, and can serve as a vehicle for medication, released upon dissolution in the plasma.

As we view it, the board's reason for agreeing that claim 1 is "broader than warranted by the disclosure" is not because the invention as disclosed is not of equal scope with claim 1 but because the claim is inclusive of a laminated dressing in which the primary layer is of non-hemostatic material *and* because there is (1) no "exemplification" of such a material and (2) no suggestion of "how to use" such a material in the laminate.

■ On the first point, the tacitly assumed need for exemplification, we do

not regard § 112, first paragraph, as requiring a specific example of everything *within the scope* of a broad claim. In re Gay, 309 F.2d 769, 50 CCPA 725 (1962). There is no question raised as to the fact that there are specific examples of what appears to be the preferred embodiment and best mode contemplated by the applicant of carrying out his claimed invention; we are here dealing only with a possible alternative embodiment within the scope of the claims. What the Patent Office is here apparently attempting is to limit all claims to the specific examples, notwithstanding the clear disclosure of a broader invention. This it may not do. As was stated in American Anode, Inc. v. Lee-Tex Rubber Products Corp., 136 F.2d 581, 585 (7th Cir. 1943):

> There is no doubt that a patentee's invention may be broader than the particular embodiment shown in his specification. A patentee is not only entitled to narrow claims particularly directed to the preferred embodiment, but also to broad claims which define the invention without a reference to specific instrumentalities. Smith v. Snow, 294 U.S. 1 [at pages 11 et seq.] 55 S.Ct. 279, 79 L.Ed. 721. * * *.

We consider the board's first reason insufficient.

On the "how to use" point we simply disagree with the board. In its broad aspect, appellant's dressing is a very simple thing. It has two layers of plasma-soluble material. The inner layer, which lies against the wound, is, like the outer layer, soluble in plasma but dissolves more rapidly than the outer layer. There are various disclosed reasons for this. Because it dissolves, it does not have to be changed or removed; in dissolving it releases any medication it may be carrying; if it is of hemostatic material, in dissolving in the plasma it produces hemostasis. The backing layer, being more slowly soluble, acts to contain any excess plasma escaping through the primary layer, provides strength, and prolongs the useful life of the dressing. It will be understood that these two layers are adhered together and are in film or sheet form, it being disclosed that the primary or inner layer may be aerated in manufacture into porous or foam form. It is disclosed that making it porous increases the speed of its dissolution, as would be expected. We agree with appellant that the board erred in saying that the disclosure contains no suggestion of a material, which might be employed as the primary layer, which is nonhemostatic. Among the materials disclosed is methyl cellulose and the specification includes the statement:

> This compound in dense form, has little or no hemostatic properties * * *.

But even without this disclosure, we do not see why, in view of the clear disclosure, quoted above, that the primary layer need *not* be hemostatic, appellant should not have claims to his combination broad enough to include such materials even though no example thereof is given. According to the broad disclosure, the only essential characteristics of the primary layer are that it be plasma-soluble and more soluble than the backing. It may or may not be hemostatic. The hemostatic embodiment is exemplified. The mere fact that applicant has stated that he does not *limit* his invention to this particular property in the primary layer does not compel him to give an example of a material lacking this characteristic on penalty of having to restrict his claims to dressings in which the primary layer is hemostatic. In effect, all appellant is saying is that a hemostatic property in the primary layer is *not* part of the broad inventive concept he has disclosed and is claiming, though it may be an advantageous characteristic and is a limitation of some narrower claims and, probably, is the preferred form of the invention.

We will not, therefore, sustain this ground of rejection.

## II

Claims 2 and 10 were rejected as "broader than warranted by the disclo-

sure" because they use the term "medicament." The claims read:

2. A laminated dressing as described in claim 1, the primary layer carrying a medicament.

10. A laminated dressing as described in claim 9, said primary layer containing a medicament.

As to these claims the board expressly rejected the examiner's reasoning and substituted the following ground for sustaining the rejection:

The criticized term [medicament], however, is too broad in that it includes medicaments not operative for appellant's stated purpose. It is well-known [sic] that "medicaments" include such materials as anti-coagulating agents and debriding agents, which would prevent the hemostatic action required of appellant's primary layer. This rejection will be sustained.

We have shown that the board erred in assuming that hemostatic action is required. The express disclosure is that it is not.

In the introductory portion of its opinion, the board said, "We will agree with appellant that he has adequately identified specific medicaments set forth in the examples [8 of them] of the patent, 3,328,259, maturing from the parent application." So we are not faced with inadequate disclosure of medicaments but merely with the proposition that because there *may* exist some medicaments *unsuited* to use in the dressing of this invention, the claims are too broad. The board is saying, in effect, that these claims which, being dependent, do no more than add a *limitation* to claim 1 (claim 9 from which claim 10 depends being itself dependent from claim 1) are too broad because not somehow limited to *operative* or suitable medicaments.

■ The concept of medicament or medication involves a highly technical subject in an art requiring a high degree of technical skill—doctors of medicine and pharmacologists. It is common knowledge that some medicines of great

utility are lethal when used in the wrong quantity, that one man's medicine is another man's poison, and that what is good medicine in one place may be bad medicine in another. The board, seemingly, is demanding a claim limitation to operative medicaments in operative quantity. We think that dependent claims such as the above, which merely add a limitation to the two-layer combination dressing by calling for medication in the primary layer, are inherently limited—by common sense if nothing else—to such medication as would be useful in the particular application. No one of ordinary skill in the art would use any other kind of medicament and there is no practical way to restrict the claim language so as to exclude all inoperative or deleterious medicaments other than by the addition of such redundant terms as "suitable" or "operative for the purposes described." We dealt with similar arguments in In re Myers, 410 F.2d 420, 56 CCPA 1129 (1969), and in dealing with an undue breadth rejection said:

If every element in a mechanical combination claim were required to be so specific as to exclude materials known to be inoperative and which even those *not* skilled in the art would not try, the claims would fail to comply with 35 USC 112 [second paragraph] because they would be so detailed as to obscure, rather than [to] particularly point out and distinctly claim, the invention.

We are here dealing with combination claims, not with claims for medicaments per se. It is always possible to put something into a combination to render it inoperative. It is not the function of claims to *exclude* all such matters but to point out what the combination is.

We consider this ground of rejection unsound and will not sustain it.

### III

Claim 3 reads:

3. A laminated dressing as described in claim 1, the primary layer containing a hemostatic agent.

The board said:

> We also agree with the Examiner's position as to the term "a hemostatic agent" in claim 3 since, contrary to appellant's argument, the claim is not limited to such agents acting in a physical manner only but includes chemical agents, for example, those in styptic pencils, which also exhibit the stated function. This claim is obviously too broad.

 The examiner merely indicated that "hemostatic agent" is too broad for some unspecified reason. The reasoning contributed by the board, apparently predicated on a theory that appellant's disclosure is limited to hemostatic agents acting in a "physical manner," seems to us without foundation. We have carefully studied the short application as well as the much more extensive patent issued to appellant on the parent application, part of which is incorporated into the application at bar by reference. One of the hemostatic materials is sodium carboxymethyl cellulose which, when plasticized, can be formed into a film to serve as the primary layer. Speaking of such a film the patent states:

> Tests have been conducted on simple cuts and it was found that the film would not only coagulate the blood, but would also combine with it, forming an artificial eschar which permitted healing thereunder.

We do not believe such coagulation of blood is a purely "physical" action. On the other hand, appellant disputes the board arguing that styptic pencils do not function through chemical action but by their astringent action which halts the flow of blood by contracting the tissues or blood vessels. We would hesitate to agree that this is not a "chemical" action. Whatever may be the shadowy line between physical and chemical behavior, we see no reason why appellant is not entitled to limit his main claim by specifying the presence in the primary layer of *any* hemostatic agent, of which he has disclosed several. He is not claiming such agents per se but is claiming a combination in which said agent is but one element. See In re Fuetterer, 319 F.2d 259, 50 CCPA 1453 (1963), and In re Boller, 332 F.2d 382, 51 CCPA 1484 (1964), which support appellant.

We will not sustain this ground of rejection.

### IV

Claim 4 reads:

> 4. A laminated dressing as described in claim 1, the two layers constituting essentially cellulose derivatives.

Here again the examiner was just making an unexplained "breadth rejection." The board found "cellulose derivatives" clearly too broad because "inclusive of any and all derivatives, no matter how complex, produced in any manner, which are neither suggested by nor represented by the specific examples herein."

 Once more we think the board was overlooking the fundamental fact that claim 4 is a limitation on claim 1, the two taken together being a claim to a combination of elements constituting a dressing, not a claim to cellulose compounds per se. The board obviously goes too far in saying the term objected to is inclusive of all cellulose derivatives because it ignores the functional limitations in claim 1 which require that the two layers both be soluble in plasma and that the cellulose derivatives be such as can be formed into "layers" which can be laminated into a dressing. There is no question but that the class of cellulose derivatives has been sufficiently exemplified to provide an *enabling* disclosure.

We have considered the cases cited by the board to support its conclusion, In re Harwood, 390 F.2d 985, 55 CCPA 922 (1968), and Austenal Labs., Inc. v. Nobilium Processing Co. of Chicago, 153 F. Supp. 709 (DC ND Ill.1957) but find them clearly distinguishable on their facts from the present case which we consider to be governed by the principles announced in In re Metcalfe, 410 F.2d

1378, 56 CCPA 1191 (1969), and In re Fuetterer, supra.

We will not sustain this rejection.

## V

Claims 7, 9, and 10 state that the backing layer contains a "cellulose derivative of the class consisting of methyl cellulose and hydro-alkyl ether of cellulose." The issue here is a simple one: Is the term "hydro-alkyl" in this context "indefinite"?

The board held that "hydro-alkyl" is an "improper designation," "substantially meaningless," and not in conformity with standard chemical terminology. Appellant was trying to cover a disclosed compound identified in argument as *hydroxy* propyl cellulose.

Appellant comes very close to admitting that "hydro-alkyl" is a misnomer and it is quite apparent that the proper term would be "hydroxy-alkyl." Appellant says it should make no difference since those skilled in the art would know what was intended.

We agree that "hydro-alkyl" is clearly wrong. The term is not without meaning, however, and could be misleading. At the very least it renders the claims in which it appears indefinite.

■ We will sustain this rejection. Doing so, it becomes unnecessary to consider another rejection of claims 7, 9, and 10 on the ground that the same term renders the claims "broader than warranted by the disclosure."

## VI

Claim 2 as originally filed reads:

2. A laminated dressing as described in claim 1, the primary layer *containing* a medicant. [Our emphasis.]

It was amended to change "containing" to "carrying" (see point II, supra) and on that account was rejected under 35 U.S.C. § 132 as containing "new matter." The board said:

We agree with the Examiner's rejection of claim 2 apparently as based upon an amendment introducing new matter contrary to the requirements of 35 U.S.C. § 132. There is no antecedent basis in the specification for the term "carrying." * * * This term, therefore, is not supported (35 U.S.C. § 112) and has been improperly introduced into the claims.

It is true the term "carrying" does not appear in the specification in this connection. Neither does the term "containing," except as it appeared in original claim 2. The disclosure is that the primary layer may be "formulated with" medicaments and that that layer "can serve as a vehicle for medication, released upon dissolution in the plasma."

■ The question, as we view it, is not whether "carrying" was a word *used* in the specification as filed but whether there is *support* in the specification for employment of the term in a claim; is the concept of carrying present in the original disclosure? We think it is. We think disclosure of the primary layer as a "vehicle" for the medication is quite sufficient for this purpose. If support for this conclusion be needed, we cite Webster's Seventh New Collegiate Dictionary (1963):

> *vehicle* * * * carriage, conveyance, fr. *vehere* to carry— * * * 1a: an inert medium in which a medicinally active agent is administered b: any of various other media acting usu. as solvents, carriers, or binders for active ingredients or pigments 2: an agent of transmission; CARRIER * * * 4: a means of carrying or transporting something; CONVEYANCE * * *.

We will not sustain this rejection.

## CONCLUSION

The rejection of claims 7, 9, and 10 is affirmed; the rejection of the remaining claims, 1–6, and 8 is reversed.

Modified.